721 F.2d 1281
 M.S. NEWS COMPANY a Kansas corporation, Plaintiff-Appellant,
v.
Antonio CASADO, Mayor of the City of Wichita, Kansas;
Robert C. Brown, Robert Knight, Gary Porter, and Connie
Peters, members of the Board of Commissioners of the City of
Wichita, Kansas, Richard LaMunyon, Chief of Police of the
City of Wichita, Kansas, and John Dekker, City Attorney for
the City of Wichita, Kansas, Defendants-Appellees.
 No. 80-2093.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 16, 1983.
Rehearing and Rehearing En Banc Denied Dec. 23, 1983.
 
 Robert C. Brown of Smith, Shay, Farmer & Wetta, Wichita, Kan. (Jack Focht, Wichita, Kan., was also on brief), for plaintiff-appellant.
 Stanley A. Issinghoff, Wichita, Kan. (Thomas R. Powell, Wichita, Kan., was also on brief), for defendants-appellees.
 Robert T. Stephan, Atty. Gen. of Kan., and Thomas D. Haney, Deputy Atty. Gen. of Kan., Topeka, Kan., filed a brief for the State of Kan. as amicus curiae in support of defendants-appellees.
 Before SETH, Chief Judge, and HOLLOWAY and McWILLIAMS, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 Plaintiff M.S. News Company (News), is a wholesale and retail distributor of periodicals and publications in Wichita, Kansas.[1] It appeals from dismissal of its action for injunctive and declaratory relief against enforcement of a portion of a Wichita ordinance. The ordinance, Number 36-172, amended sections 5.68.150 and 5.68.155 of the Code of the City of Wichita and created 5.68.156. This section prohibits the promotion of sexually oriented materials to minors. It is the sole portion of the ordinance at issue in this action, and it is reproduced as an appendix to this opinion.
 
 
 2
 The Wichita ordinance is designed to prevent minors from being exposed to sexually oriented materials that are harmful to them. The ordinance defines "harmful to minors" and makes it an offense to display such material to minors if, as a part of the invited general public, they will be exposed to it. It further proscribes, inter alia, selling, furnishing or presenting to minors any material or performance that is harmful to them.
 
 
 3
 The controlling facts are not in dispute. By early August 1979, plaintiff News became aware of the impending passage of the subject ordinance. On August 20, News brought this action against all members of the Board of Commissioners, the Chief of Police, and the City Attorney of Wichita. It sought a declaratory judgment that Section 5.68.156 "is unconstitutional on its face and as applied," and injunctive relief restraining the defendants from enforcing the section. The district judge promptly issued a temporary restraining order.
 
 
 4
 Defendants filed a motion to dismiss with a supporting brief claiming, inter alia, that the complaint failed to state a cause of action. News then filed a reply brief contesting the motion. The district court held a hearing to consider plaintiff's request for a permanent injunction and the defendants' motion to dismiss, heard argument, and took the matter under advisement. The judge shortly thereafter dissolved the temporary restraining order, denied the request for preliminary and permanent injunctive relief and granted defendant's motion to dismiss. Plaintiff appeals.
 
 
 5
 Plaintiff makes four main arguments on appeal, contending that the ordinance: (1) goes beyond the permissible scope of Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), and is overbroad and vague both on its face and as applied;[2] (2) violates the Equal Protection Clause of the Fourteenth Amendment; (3) creates a prior restraint in violation of the First Amendment; and (4) deprives defendants of their Sixth Amendment right to a jury trial. We will consider each of these contentions in turn.[3]
 
 
 6
 * FACIAL OVERBREADTH AND VAGUENESS
 
 
 7
 Plaintiff News challenges the ordinance for overbreadth and vagueness. It essentially says that the realistic effect of the ordinance will be to limit, by its overbroad application, the access of adults, and minors approaching adulthood, to constitutionally permissible material. News further argues that the ordinance is vague in that it neither affords fair warning to those within its reach, nor provides explicit standards for those who enforce it. Brief of Appellant at 17.
 
 
 8
 Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), rejected a vagueness challenge to a New York statute similar to the Wichita ordinance. The Supreme Court there held that it is constitutional to proscribe the sale of "girlie magazines" to minors, where the magazines contained defined forms of sexually oriented material, even though such material was not obscene for adults. The Wichita ordinance at issue is almost identical to the statute upheld in Ginsberg. Ginsberg, supra, 390 U.S. at 645-47, 88 S.Ct. at 1283-84. Plaintiff attempts to distinguish Ginsberg by pointing out differences between the two laws.
 
 
 9
 There are two principal differences between the Wichita ordinance and the statute in Ginsberg that are relevant to the constitutionality of the Wichita ordinance on its face. First, the Wichita ordinance uses the Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), obscenity test,[4] and second, it proscribes not just the dissemination of material harmful to minors, as Ginsberg did, but also the display of such material.[5] We find no constitutional infirmity in the ordinance resulting from either of these changes, or in any of the prohibitions of display, sale or presentation of proscribed materials to minors.
 
 A. Application of the Miller test
 
 10
 We are unable to discern any substance to plaintiff's argument that replacing the Memoirs test with the Miller test creates either an overbreadth or vagueness problem. The ordinance in Ginsberg prohibited distribution to minors of material that was "harmful to minors." In defining "harmful to minors," the Memoirs obscenity test was adapted so that material could not be distributed to minors if it: (1) appealed to the prurient interest of minors; (2) was patently offensive to what the adult community believed was suitable for minors; and (3) was utterly without social importance for minors. Ginsberg, supra, 390 U.S. at 646, 88 S.Ct. at 1284. The Wichita ordinance is virtually identical to that upheld in Ginsberg except that the Miller obscenity test is used rather than the Memoirs test. Although the ordinance alters the Miller test so that it can be used for determining what material is harmful to minors, this is precisely what the ordinance in Ginsberg did with the old Memoirs test. We reject the argument that the use of the Miller test rendered the ordinance overbroad or vague.[6]
 
 
 11
 B. The prohibitions of the ordinance protecting minors
 
 
 12
 The Wichita ordinance prohibits (a) displaying material "harmful to minors," (b) selling, furnishing or presenting such material to minors; and (c) presenting to a minor any "performance" harmful to him. We feel that Ginsberg has already upheld all such prohibitions except that of display. We therefore focus on the overbreadth and vagueness challenges to the display prohibition.
 
 
 13
 The ordinance prohibits displaying materials harmful to minors when minors "as a part of the invited general public, will be exposed to view such material." The ordinance provides that such material is not displayed if it is "kept behind devices commonly known as 'blinder racks' so that the lower two-thirds of the material is not exposed to view." We believe this provision is neither vague nor overbroad.
 
 
 14
 Although First Amendment challenges to legislation under the overbreadth and vagueness doctrines are related,[7] they are distinct. The vagueness doctrine is anchored in the Due Process Clauses of the Fifth and Fourteenth Amendments,[8] and protects against legislation lacking sufficient clarity of purpose and precision in drafting. See Erznoznik v. City of Jacksonville, supra, 422 U.S. at 217-18, 95 S.Ct. at 2276-77; Grayned v. City of Rockford, 408 U.S. 104, 108-14 & n. 5, 92 S.Ct. 2294, 2298-302 & n. 5, 33 L.Ed.2d 222 (1972). Overbroad legislation need not be vague, indeed it may be too clear; its constitutional infirmity is that it sweeps protected activity within its proscription. See Erznoznik v. City of Jacksonville, supra, 422 U.S. at 212-13, 95 S.Ct. at 2274-75; Grayned v. City of Rockford, supra, 408 U.S. at 114, 92 S.Ct. at 2302. We consider the overbreadth and vagueness issues separately.[9]
 
 1. Overbreadth
 
 15
 As noted, plaintiff News argues that the Wichita ordinance is overbroad, restricting the access of adults and minors approaching adulthood to constitutionally permissible publications. Brief of Appellant at 17. News says that as commercial enterprises seek to avoid violating the ordinance, the natural tendency will be to limit materials available for view by anyone. Id. at 13.
 
 
 16
 We disagree. First, as noted, with respect to the sale or distribution of materials "harmful to minors," the ordinance has a clear and acceptable standard that will permit sale or distribution to adults of such materials. Second, the portion of the ordinance dealing with display of material "harmful to minors" is reasonably structured. It is true that compliance with the ordinance will to some degree restrict the viewing by adults of materials which are, as to adults, constitutionally protected. However, the restriction is reasonable and does not offend the First Amendment.
 
 
 17
 Reasonable time, place and manner regulations are permissible where the regulations are necessary to further significant governmental interests, Young v. American Mini Theatres, 427 U.S. 50, 63 & n. 18, 96 S.Ct. 2440, 2448 & n. 18, 49 L.Ed.2d 310 (1976) (plurality), and are narrowly tailored to further the State's legitimate interest. Grayned v. City of Rockford, supra, 408 U.S. at 116-17, 92 S.Ct. at 2303-04.[10] We find Young, supra, instructive. In Young the plurality held that Detroit zoning ordinances providing that an adult theatre may not be located within 1000 feet of any two other adult theatres (or other "regulated uses") or within 500 feet of a residential area, was consistent with the First and Fourteenth Amendments. The plurality recognized that this was content-based regulation but upheld it because the city had a sufficient interest in preserving the quality of urban life and the ordinance did not suppress or greatly restrict access to lawful speech. Young, supra, 427 U.S. at 63-72 & n. 35, 96 S.Ct. at 2448-53 & n. 35 (plurality). Similarly the display provision of the Wichita ordinance is a regulation based on content. We believe that it is likewise justified by the substantial governmental interest in protecting minors from exposure to harmful adult material.[11] See supra note 5.
 
 
 18
 Moreover, the proscription on display of material harmful to minors does not unreasonably restrict adults' access to material which is not obscene as to them.[12] The ordinance permits the "display" of material harmful to minors if it is in blinder racks which conceal the lower two-thirds of the material. Thus, adults may still have some access to materials not obscene as to them, and they may purchase such material.
 
 
 19
 In considering News's claim of overbreadth,[13] we must remember that invalidating legislation as overbroad on its face is "manifestly strong medicine" and is employed sparingly and "only as a last resort." New York v. Ferber, --- U.S. ----, ----, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). In Ferber, the court implied that when conduct plus speech is involved, the overbreadth " 'must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " New York v. Ferber, supra, --- U.S. at ----, 102 S.Ct. at 3362 (quoting Broadrick v. Oklahoma, supra, 413 U.S. at 615, 93 S.Ct. at 2917). Moreover, legislation should not be held facially overbroad unless it is not readily subject to a narrowing construction, and the deterrent effect on speech is real and substantial. Young v. American Mini Theatres, supra, 427 U.S. at 60, 96 S.Ct. at 2447; Erznoznik v. City of Jacksonville, supra, 422 U.S. at 216, 95 S.Ct. at 2276.[14]
 
 
 20
 The portion of the Wichita ordinance proscribing display to minors is conduct plus speech because it regulates the manner in which material with a particular content can be disseminated; it does not regulate pure speech itself. Thus, there must be substantial overbreadth for the ordinance to be held overbroad on its face. We find no such infirmity. As noted, the display portion of the ordinance does not restrict minors' access to materials which they have a constitutional right to obtain. See Ginsberg, supra, 390 U.S. at 634-43, 88 S.Ct. at 1277-82. The ordinance only prohibits displaying material "harmful to minors," and this term is defined to include only material that is obscene as to minors under the Miller test as adapted to evaluate whether material is harmful to minors. Although minors are entitled to a significant measure of First Amendment protection, Erznoznik v. City of Jacksonville, supra, 422 U.S. at 212-13, 95 S.Ct. at 2274-75; Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), a narrowly drawn ordinance restricting their access to sexually oriented material does not abridge their First Amendment rights. See Ginsberg, supra, 390 U.S. at 634-43, 88 S.Ct. at 1277-82.
 
 
 21
 We therefore hold that the display provision of the ordinance is not overbroad on its face.2. Vagueness
 
 
 22
 If a law threatens to inhibit First Amendment freedoms a more stringent vagueness test is used. See Hoffman Estates v. Flipside, Hoffman Estates, Inc., supra, 455 U.S. at 499, 102 S.Ct. at 1193; Hynes v. Mayor of Oradell, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). In the First Amendment area vague laws offend three important values. First, they do not give individuals fair warning of what is prohibited. Second, lack of precise standards permits arbitrary and discriminatory enforcement. Finally, vague statutes encroach upon First Amendment freedoms by causing citizens to forsake activity protected by the First Amendment for fear it may be prohibited.[15] Grayned v. City of Rockford, supra, 408 U.S. at 108-09, 92 S.Ct. at 2298-99; see Hynes v. Mayor of Oradell, supra, 425 U.S. at 620-22, 96 S.Ct. at 1760-61; see also General Stores, Inc. v. Bingaman, 695 F.2d 502, 503 (10th Cir.1982). Hejira Corp. v. MacFarlane, 660 F.2d 1356, 1365 (10th Cir.1981).
 
 
 23
 We find no vagueness defect in the Wichita ordinance. First, the ordinance provides fair warning of what is prohibited. It plainly prohibits displaying material harmful to minors in a manner so that minors will be exposed to it. Although it is not "an answer to an argument that a particular regulation of expression is vague to say that it was adopted for the salutary purpose of protecting children," Interstate Circuit, Inc. v. Dallas, 390 U.S. 676, 689, 88 S.Ct. 1298, 1306, 20 L.Ed.2d 225 (1968), " '... the Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices ....' " Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957) (quoting United States v. Petrillo, 332 U.S. 1, 7-8, 67 S.Ct. 1538, 1541-42, (1947)). We believe that the ordinance does this. The obscenity standard as to minors is clearly defined. Common understanding and practices provide commercial establishments with sufficient notice of the type of display the ordinance is designed to prohibit. See Broadrick v. Oklahoma, supra, 413 U.S. at 608, 93 S.Ct. at 2913; Miller, supra, 413 U.S. at 27, 93 S.Ct. at 2616.
 
 
 24
 Furthermore, whatever imprecision is present is mitigated by the ordinance's scienter provision. See Hoffman Estates v. Flipside, Hoffman Estates, Inc., supra, 455 U.S. at 499, 102 S.Ct. at 1193 ("[S]cienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.") (footnote omitted). The ordinance defines knowingly in terms almost identical to the definition approved in Ginsberg. See Ginsberg, supra, 390 U.S. at 646, 88 S.Ct. at 1284. In addition to the degree of scienter that the Constitution requires be shown to obtain a conviction for violating obscenity laws,[16] the Wichita ordinance, as Ginsberg did, makes it an excuse from liability if one makes an honest mistake as to a minor's age.[17]
 
 
 25
 Second, we do not perceive any real danger of arbitrary enforcement. To violate the ordinance, one must display material which, taken as a whole, must fail the Miller test as applied to minors. This sufficiently constrains the discretion of the authorities. The ordinance adopts the correct standard for evaluating whether material is harmful to minors and we will not assume that the authorities will act in bad faith.
 
 
 26
 Third, we are not persuaded that the ordinance will lead citizens to forsake activity protected by the First Amendment. The ordinance is narrowly drawn within the confines of the Miller and Ginsberg standards. It provides fair warning of what is prohibited, and sufficiently constrains the discretion of the authorities. In such circumstances we do not believe it chills the exercise of First Amendment rights.
 
 
 27
 In sum, we are not persuaded to hold the Wichita ordinance invalid for vagueness.
 
 II
 EQUAL PROTECTION
 
 28
 The Wichita ordinance provides that it is an affirmative defense if the material or performance was "displayed, presented or disseminated to a minor at a recognized and established school, church, museum, medical clinic, hospital, public library, governmental agency, quasi-governmental agency and [if this was done] for a bona fide governmental, educational or scientific purpose." Plaintiff News argues that the ordinance is violative of the Equal Protection Clause of the Fourteenth Amendment because only commercial establishments are subject to its sanctions.
 
 
 29
 We disagree. The ordinance creates a classification that distinguishes between commercial enterprises and non-commercial enterprises. Such classifications are upheld if they are rationally related to a legitimate state interest. See New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam); Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 810-14, 96 S.Ct. 2488, 2498-500, 49 L.Ed.2d 220 (1976); Hart Book Stores, Inc. v. Edminsten, 612 F.2d 821, 831 (4th Cir.1979), cert. denied, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980).[18] See also Schilb v. Kuebel, 404 U.S. 357, 364, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971) ("[C]lassifications will be set aside only if no grounds can be conceived to justify them ....").
 
 
 30
 We rejected a similar argument in Piepenburg v. Cutler, 649 F.2d 783 (10th Cir.1981). In Piepenberg a state statute prohibited exhibiting pornographic films and created an affirmative defense if their distribution "was restricted to institutions or persons having scientific, educational, governmental, or other similar justification for possessing pornographic material." Id. at 785. We rejected the argument that this violated the Equal Protection Clause, reasoning that it was possible to conceive of justifications for the classification.
 
 
 31
 We likewise believe that the Wichita ordinance's classification must be upheld. Distinguishing between commercial and non-commercial institutions bears a rational relationship to a legitimate state interest. The Supreme Court has recognized that there are "legitimate state interests at stake in stemming the tide of commercialized obscenity...." Paris Adult Theatre I v. Slaton, 413 U.S. 49, 57, 93 S.Ct. 2628, 2635, 37 L.Ed.2d 446 (1973); see also Young v. American Mini Theatres, supra, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (upholding zoning ordinances applicable to adult theatres or similar establishments). Commercial enterprises have the economic incentive to make sales and are therefore more likely to press the display and dissemination of material harmful to minors. Hence, making a distinction between commercial and non-commercial enterprises is sufficiently grounded in a legitimate state interest.
 
 
 32
 We conclude that the ordinance does not violate the Equal Protection Clause.
 
 III
 PRIOR RESTRAINT
 
 33
 Plaintiff argues that the ordinance creates an impermissible prior restraint. It contends that the threat of criminal prosecution, the substantial penalties available to a prosecutor, and the almost indefinable standards combine to create an unconstitutional prior restraint on the right to distribute their materials. Brief of Appellant at 34. We disagree.
 
 
 34
 The ordinance creates a penalty for violating its terms. It does not require prior approval of the authorities before any material can be distributed or displayed. "[T]here is a world of difference between a government statement that one cannot speak at all and a statement that one can speak out at some risk of paying a specified cost." Hunter, Toward a Better Understanding of the Prior Restraint Doctrine: A Reply to Professor Mayton, 67 Cornell L.Rev. 283, 293 (1982).
 
 
 35
 The Supreme Court has expressed a preference for subsequent punishment over prior restraint. See, e.g., Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 558-59, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975); Carroll v. Princess Anne, 393 U.S. 175, 180-81, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968); see also Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 589, 96 S.Ct. 2791, 2817, 49 L.Ed.2d 683 (1976) (Brennan, J., concurring); New York Times Co. v. United States, 403 U.S. 713, 733-37, 91 S.Ct. 2140, 2151-53, 29 L.Ed.2d 822 (1971) (White, J., concurring). The Court has suggested that although the Government may not be able to restrain an individual from expressing himself, it does not follow that he cannot be punished if he abuses his rights. Southeastern Promotions, Ltd. v. Conrad, supra, 420 U.S. 558-59, 95 S.Ct. 1246.
 
 
 36
 We are mindful that the Supreme Court has held that a system of prior administrative notice of a determination of obscenity as to particular publications, with subsequent criminal prosecution for distribution possible, violated constitutional rights protected by the Fourteenth Amendment. See, e.g., Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70-71, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).[19] Such a conclusion is not justified here, however, because there is no such prior administrative determination, nor any significant risk that one may be prosecuted for engaging in protected conduct. We cannot say that on its face the Wichita ordinance has the infirmities of a prior restraint. The standard by which materials are to be judged is neither overbroad nor vague and there have been no threats of bad faith enforcement.
 
 
 37
 We conclude that the ordinance imposes no unlawful prior restraint.
 
 IV
 TRIAL BY JURY
 
 38
 News also contends that the ordinance is unconstitutional because it violates the Sixth Amendment right to trial by jury. More specifically, it argues that prosecutions under the ordinance take place before the Municipal Court for the City of Wichita where trial is to the court,[20] and the trial occurs without any determination on obscenity by a jury, which is essential since contemporary community standards must be applied.
 
 
 39
 Relying on Miller, supra, 413 U.S. at 26, 30, 33-34, 93 S.Ct. at 2616, 2618, 2619-20, News says "that the only manner in which the facts can be found so as to determine the prevailing standards in the adult community is through the decision of a jury." Brief of Appellant at 24. News reasons that the obscenity test "requires the participation of the community wherein the action is brought." Id. at 25, 93 S.Ct. at 2615. Likewise, News points to statements in Hamling v. United States, 418 U.S. 87, 105, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590 (1974), that a juror is permitted "to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination ...." News also relies on statements in Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), as support for its position that a jury trial is constitutionally required in the first instance in obscenity cases.[21]
 
 
 40
 The defendants respond to the jury trial argument, inter alia, by pointing to the right to a jury trial de novo on appeal in such cases. Kansas, like numerous states, has a two-tier system for adjudicating specific cases. In Kansas, "[t]he municipal court of each city shall have jurisdiction to hear and determine cases involving violations of the ordinances of the city." Kan.Stat.Ann. Sec. 12-4104 (1982). Some states provide a jury trial in each tier; others provide a jury only in the second tier but allow an accused to by-pass the first; and still others do not allow an accused to avoid a trial of some sort at the first tier before he obtains a trial by jury at the second. See Ludwig v. Massachusetts, 427 U.S. 618, 620, 96 S.Ct. 2781, 2783, 49 L.Ed.2d 732 (1976).
 
 
 41
 Under the Kansas procedure, on a plea of no contest a finding of guilty may be adjudged. Kan.Stat.Ann. Sec. 12-4406(b) (1982). If an accused pleads guilty, the municipal judge may hear evidence touching on the nature of the case, otherwise ascertain the facts, and then may refuse or accept the plea, assess punishment and enter the proper judgment. Kan.Stat.Ann. Sec. 12-4407. All trials in the municipal court are to the municipal judge or the municipal judge pro tem. Kan.Stat.Ann. Sec. 12-4502. However, the accused has the right to appeal and then the case is tried de novo in the district court where trial by jury may be requested.[22]
 
 
 42
 The Supreme Court has said that such a procedure affords an accused "the absolute right to have his guilt determined by a jury composed and operating in accordance with the Constitution." Ludwig v. Massachusetts, supra, 427 U.S. at 625, 96 S.Ct. at 2785. Moreover, it provides him a clean slate. Colten v. Kentucky, 407 U.S. 104, 112-19, 92 S.Ct. 1953, 1958-61, 32 L.Ed.2d 584 (1972).[23] Hence we cannot agree that the decisions of the Supreme Court, considered together, call for a holding that this Kansas procedure for obscenity prosecutions is invalid. The Court's decisions in Ludwig and Colten have upheld the two-tier systems and the earlier Callan decision is distinguishable, as we have explained. See note 23 supra.
 
 
 43
 We must now consider whether the reference to "the average person, applying contemporary community standards" in the First Amendment obscenity test, see Roth v. United States, 354 U.S. 476, 479, 77 S.Ct. 1304, 1305, 1 L.Ed.2d 1498 (1957), as well as the numerous references to the jury system which the Court has made while construing and defining this test, constitutionally mandate a jury trial in the first instance. News cites state court decisions holding that in obscenity cases an accused must have a jury trial at the first tier. See City of Kansas City v. Darby, 544 S.W.2d 529, 532 (Mo.1976) appeal dismissed, 431 U.S. 935, 97 S.Ct. 2644, 53 L.Ed.2d 252 (1977); cf. City of Duluth v. Sarette, 283 N.W.2d 533, 537-38 (Minn.1979). The Darby case, which relied on the above-mentioned portions of Miller and Hamling, capsulizes plaintiff's point, stating that it held "in obscenity cases only, that a trial by jury is required in the first instance and that a trial by jury after appeal to circuit court 'does not satisfy the requirements of the Constitution.' " (Quoting Callan v. Wilson, 127 U.S. 540, 557, 8 S.Ct. 1301, 1307, 32 L.Ed. 223 (1888)). (Emphasis in original).
 
 
 44
 We are not persuaded to follow these decisions. The Supreme Court has not held that the trier of fact in cases applying the obscenity test must, ipso facto, be a jury. The Court has recognized that there is no constitutional right to a trial by jury in state civil proceedings to determine what is obscene material. Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973). Indeed it has been held by some courts that criminal prosecutions for obscenity need not be by jury trials. See Coble v. City of Birmingham, 389 So.2d 527, 533 (Ala.Cr.App.1980); Holderfield v. City of Birmingham, 380 So.2d 990, 991-93 (Ala.Cr.App.1979), cert. denied, 449 U.S. 888, 101 S.Ct. 245, 66 L.Ed.2d 114.
 
 
 45
 And even assuming that the jury system may be the desirable method for judging obscenity by community standards, the Kansas procedure is not unconstitutional in view of the right it provides for a de novo jury trial on appeal. Commonwealth v. Rich, 63 Pa.Commw. 30, 437 A.2d 516, 520-21 (1981); Manns v. Commonwealth, 213 Va. 322, 191 S.E.2d 810, (1972); Walker v. Dillard, 363 F.Supp. 921 (W.D.Va.1973), rev'd on other grounds, 523 F.2d 3 (4th Cir.), cert. denied, 423 U.S. 906, 96 S.Ct. 208, 46 L.Ed.2d 136 (1975). In the de novo jury trial the accused has a clean slate. Colten v. Kentucky, supra, 407 U.S. at 119, 92 S.Ct. at 1961. Moreover the appeal stays "all further proceedings upon the judgment appealed from," Kan.Stat.Ann. Sec. 12-4601 (1982).[24]
 
 
 46
 We find no violation of plaintiff News's constitutional rights under the First or Sixth Amendments in the procedure laid out for prosecution of violations of the ordinance.
 
 V
 
 47
 In sum, we are not convinced that there is any substantive or procedural infirmity demonstrated in the Wichita ordinance. Accordingly the judgment is
 
 
 48
 AFFIRMED.
 
 APPENDIX
 
 49
 Section 5.68.156 to ordinance number 36-172 of the Code of the City of Wichita, Kansas, provides as follows:
 
 
 50
 Displaying material harmful to minors.
 
 
 51
 (1) Definitions. Minor means any unmarried person under the age of eighteen (18) years.
 
 
 52
 'Harmful to Minors' means that quality of any description, exhibition, presentation or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse when the material or performance, taken as a whole, has the following characteristics:
 
 
 53
 (a) The average adult person applying contemporary community standards would find that the material or performance has a predominant tendency to appeal to a prurient interest in sex to minors; and
 
 
 54
 (b) The average adult person applying contemporary community standards would find that the material or performance depicts or describes nudity, sexual conduct, sexual excitement or sado-masochistic abuse in a manner that is patently offensive to prevailing standards in the adult community with respect to what is suitable for minors; and
 
 
 55
 (c) The material or performance lacks serious literary, scientific, educational, artistic, or political value for minors.
 
 
 56
 'Nudity' means the showing of the human male or female genitals, pubic area, or buttocks with less than a full opaque covering; the showing of the female breast with less than a full opaque covering of any portion thereof below the top of the nipple; or the depiction of covered male genitals in a discernibly turgid state.
 
 
 57
 'Sexual conduct' means acts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person be a female, breast.
 
 
 58
 'Sexual excitement' means the condition of human male or female genitals when in a state of sexual stimulation or arousal.
 
 
 59
 'Sado-masochistic abuse' means flagellation or torture by or upon a person clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.
 
 
 60
 'Material' means any book, magazine, newspaper, pamphlet, poster, print, picture, figure, image, description, motion picture film, record, or recording tape, video tape.
 
 
 61
 'Performance' means any motion picture, film, video tape, played record, phonograph or tape, preview, trailer, play, show, skit, dance, or other exhibition performed or presented to or before an audience of one or more, with or without consideration.
 
 
 62
 'Knowingly' means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of both:
 
 
 63
 (a) The character and content of any material or performance which is reasonably susceptible of examination by the defendant, and
 
 
 64
 (b) The age of the minor; however, an honest mistake shall constitute an excuse from liability hereunder if the defendant made a reasonable bona fide attempt to ascertain the true age of such minor.
 
 
 65
 'Person' means any individual, partnership, association, corporation, or other legal entity of any kind.
 
 
 66
 'A reasonable bona fide attempt' means an attempt to ascertain the true age of the minor by requiring production of a driver's license, marriage license, birth certificate or other governmental or educational identification card or paper and not relying solely on the oral allegations or apparent age of the minor.
 
 
 67
 (2) Offenses. No person having custody, control or supervision of any commercial establishment shall knowingly:
 
 
 68
 (a) display material which is harmful to minors in such a way that minors, as a part of the invited general public, will be exposed to view such material provided, however, a person shall be deemed not to have "displayed" material harmful to minors if the material is kept behind devices commonly known as "blinder racks" so that the lower two-thirds of the material is not exposed to view.
 
 
 69
 (b) Sell, furnish, present, distribute, allow to view, or otherwise disseminate to a minor, with or without consideration, any material which is harmful to minors; or
 
 
 70
 (c) Present to a minor or participate in presenting to a minor, with or without consideration, any performance which is harmful to a minor.
 
 
 71
 (3) Defenses. It shall be an affirmative defense to any prosecution under this ordinance that:
 
 
 72
 The material or performance involved was displayed, presented or disseminated to a minor at a recognized and established school, church, museum, medical clinic, hospital, public library, governmental agency, quasi-governmental agency and persons acting in their capacity as employees or agents of such persons or organizations, and which institution displays, presents or disseminates such material or performance for a bona fide governmental, educational or scientific purpose.
 
 
 73
 (4) Penalties. Any person who shall be convicted of violating any provision of this section is guilty of a misdemeanor and shall be fined a sum not exceeding Five Hundred Dollars ($500.00) and may be confined in jail for a definite term which shall be fixed by the court and shall not exceed one (1) month. Each day that any violation of this section occurs or continues shall constitute a separate offense and shall be punishable as a separate violation. Every act, thing, or transaction prohibited by this section shall constitute a separate offense as to each item, issue or title involved and shall be punishable as such. For the purpose of this section, multiple copies of the same identical title, monthly issue, volume and number issue or other such identical material shall constitute a single offense.
 
 
 
 [1]
 At the time of the filing of this action before the district court, News was a wholesale distributor of various periodicals and publications in Wichita while a co-plaintiff, Town Crier of Wichita, Inc., was a retailer of such goods. News has since acquired the assets of Town Crier of Wichita, Inc., and is a wholesale and retail distributor of periodicals and publications. Thus, News is the only plaintiff-appellant. See Brief of Appellant at 3-4
 
 
 [2]
 By dismissing plaintiff's action, the district court refused to enjoin enforcement of the newly enacted ordinance. The court held that on its face the ordinance was constitutional; the district court did not decide whether the ordinance is constitutional as applied. I R. 119. In such circumstances, we consider only whether the ordinance is constitutional on its face
 
 
 [3]
 If the district court considers matters outside the pleadings, Rule 12(b) requires the court "to treat the motion to dismiss as one for summary judgment and to dispose of it as provided in Rule 56 [Fed.R.Civ.P. 56]." Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam); see Owens v. Rush, 654 F.2d 1370, 1377 n. 9 (10th Cir.1981); 6 J. Moore & J. Wicker, Moore's Federal Practice (Part 2), p 56.11 (1982). Here the district court had before it matters outside the pleadings, including two affidavits in support of News' request for a temporary restraining order and a preliminary injunction. See II R. 1-45. We therefore review the dismissal as an order granting summary judgment
 
 
 [4]
 The ordinance in Ginsberg used the test approved in Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). Since then, in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) the Supreme Court has enunciated a somewhat different test. Under Miller, to determine if material is obscene and therefore unprotected, the trier of fact must inquire:
 (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.
 Miller, supra, 413 U.S. at 24, 93 S.Ct. at 2615 (citations omitted). The Wichita ordinance and the statute approved in Ginsberg both adapted the current obscenity test so it could be used to determine whether material is harmful to minors.
 
 
 [5]
 Plaintiff also argues that the ordinance "exceeds the rights conferred on the Government by Ginsberg v. New York." Brief of Appellant at 10. Plaintiff argues it is inconsistent with Ginsberg to create an affirmative defense for displays that have a bona fide governmental, educational or scientific purpose. We disagree and address the equal protection issues stemming from this later. See infra Part II
 Plaintiff's contention that the ordinance is inconsistent with Ginsberg because it proscribes distribution and display of material that is not "suitable" for minors is without merit. The ordinance approved in Ginsberg and Wichita's ordinance both use this term in the same context.
 We similarly reject plaintiffs' contention that the Wichita ordinance unconstitutionally expands the definition of obscenity to include "within its proscriptions ... definitions which are also incongruous with the 'patently offensive' element of Miller and which encompass depictions of sexual conduct which are clearly legitimate and not 'hard core.' " Brief of Appellant at 13. Although the ordinance does proscribe dissemination of some material protected as to adults, the proscription applies only to dissemination or display to juveniles, not adults. Plaintiff's argument implicitly rejects the rule from Ginsberg that it is constitutional to proscribe dissemination of generally protected materials to juveniles when such materials are harmful to them. Later cases recognize that the state has a legitimate interest in preventing juveniles from being exposed to sexually oriented materials even when they are not obscene as to adults. See, e.g., New York v. Ferber, --- U.S. ----, ----, 102 S.Ct. 3348, 3354, 73 L.Ed.2d 1113 (1982); FCC v. Pacifica Foundation, 438 U.S. 726, 748-50, 98 S.Ct. 3026, 3039-41, 57 L.Ed.2d 1073 (1978) (plurality); Miller v. California, supra, 413 U.S. at 19, 93 S.Ct. at 2612.
 
 
 [6]
 We are not faced with an ordinance that is overbroad because it prohibits dissemination to minors of material that is not even obscene as to them. The Wichita ordinance is limited so that only material that is obscene as to minors may not be exposed to them. When courts have found similar legislation overbroad, generally the legislation has in some way sought to regulate material that is not obscene even as to minors. See Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) (ordinance making it an offense for outdoor drive-in theatre to exhibit film containing any nudity); American Booksellers' Ass'n v. McAuliffe, 533 F.Supp. 50 (N.D.Ga.1981) (statute prohibiting display or sale to minors of material containing nude figures held overbroad because prohibition extends to material not obscene as to minors); Allied Artists Pictures Corp. v. Alford, 410 F.Supp. 1348 (W.D.Tenn.1976) (ordinance overbroad because it prohibited exposing juveniles to films containing language that was not obscene as to juveniles); American Booksellers Ass'n, Inc. v. Superior Court, 129 Cal.App.3d 197, 181 Cal.Rptr. 33 (2d Dist.1982) (ordinance overbroad because it required sealing material containing any photo whose primary purpose is sexual arousal regardless of whether obscene as to minors); Calderon v. City of Buffalo, 61 A.D.2d 323, 402 N.Y.S.2d 685 (1978) (ordinance overbroad because it prohibited sale and exhibition to juveniles of material that was not obscene as to juveniles); Oregon v. Frink, 60 Or.App. 209, 653 P.2d 553 (1982) (statute prohibiting dissemination of all nudity to minors overbroad because it does not limit prohibition to material that is obscene as to juveniles)
 Nor are we faced with an ordinance whose standard for determining whether material is obscene either to minors or adults is vague. The Wichita Ordinance uses almost the identical language approved in Ginsberg with the exception of using the Miller test. When legislation designed to protect minors from sexually oriented matters has been found to be unconstitutionally vague, the standard for evaluating whether the material was obscene as to minors has generally been the source of the vagueness. See, e.g., Rabeck v. New York, 391 U.S. 462, 88 S.Ct. 1716, 20 L.Ed.2d 741 (1968) (per curiam); Interstate Circuit, Inc. v. Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); American Booksellers Ass'n v. McAuliffe, 533 F.Supp. 50 (N.D.Ga.1981); Hillsboro News Co. v. City of Tampa, 451 F.Supp. 952 (M.D.Fla.1978); Calderon v. City of Buffalo, 61 A.D.2d 323, 402 N.Y.S.2d 685 (1978). We are satisfied that the standard used in the Wichita ordinance is not afflicted with such vagueness.
 
 
 [7]
 See e.g., Village of Hoffman Estates, Inc. v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 & n. 6, 102 S.Ct. 1186, 1191 & n. 6, 71 L.Ed.2d 362 (1982) (In determining whether there is substantial overbreadth the vagueness of the enactment should be analyzed)
 
 
 [8]
 See, e.g., Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (Fifth Amendment); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) (Fourteenth Amendment)
 
 
 [9]
 In Village of Hoffman Estates, Inc. v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191-92, 71 L.Ed.2d 362 (1982), the Court indicated that in considering a facial challenge to the constitutionality of a statute for overbreadth and vagueness, a court should first consider the overbreadth question and then the vagueness question
 
 
 [10]
 One member of the plurality in Young v. American Mini Theatres, supra, would require that the regulation be no more intrusive than necessary to achieve the governmental purpose. Young, supra, 427 U.S. at 79-80, 96 S.Ct. at 2456-57 (Powell, J., concurring). The other four members of the plurality implied that the zoning ordinances might not be upheld but for the district court's finding that there were myriad locations where such theatres could be opened. Young, supra, 427 U.S. at 71-72 n. 35, 96 S.Ct. at 2452-53 n. 35 ("The situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to lawful speech.")
 
 
 [11]
 Other courts have similarly viewed restrictions on displaying sexually oriented materials to minors as time, place or manner regulations. See, e.g., American Booksellers Ass'n, Inc. v. Superior Court, 129 Cal.App.3d 197, 181 Cal.Rptr. 33 (1982) (ordinance requiring any material whose "primary purpose" was "sexual arousal" to be sealed was held overbroad because it restricted adults' access to materials they had right to obtain); Dover News, Inc. v. City of Dover, 117 N.H. 1066, 381 A.2d 752 (1977) (per curiam) (In dicta, court approves of a regulation requiring material harmful to minors to be displayed no lower than sixty inches)
 
 
 [12]
 Legislation whose purpose was to protect minors from exposure to sexually oriented materials has been stricken as overbroad when it unnecessarily restricted adults' access to the material. See, e.g., Butler v. Michigan, 352 U.S. 380, 381, 383, 77 S.Ct. 524, 524, 525, 1 L.Ed.2d 412 (1957) (statute proscribing sale of any book "manifestly tending to the corruption of the morals of youth" "not reasonably restricted to evil with which it is said to deal" because it reduces adult population "to reading only what is fit for children."); Home Box Office, Inc. v. Wilkinson, 531 F.Supp. 987, 997 (D.Utah 1982) (despite asserted child protection justification, statute proscribing distribution of indecent material by wire or cable held overbroad because it proscribes distribution to homes having no children); see also Community Television of Utah, Inc. v. Roy City, 555 F.Supp. 1164, 1166 n. 8, 1172-73 (D.Utah 1982) (ordinance analogous to statute in Wilkinson, supra, held overbroad, following reasoning of Wilkinson )
 
 
 [13]
 It is not clear if plaintiff argues that the ordinance is overbroad merely because it regulates the distribution of materials that are constitutionally protected as to adults, or whether the display provision itself is overbroad. See Brief of Appellant at 17, 20. We have already rejected the former argument, and we address the latter because we believe plaintiff raises the argument at least implicitly
 
 
 [14]
 The Supreme Court has said "even if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the 'remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct ....' " New York v. Ferber, supra, --- U.S. at ---- n. 25, 102 S.Ct. at 3362 n. 25 (legislation prohibiting sale of pornography in which children are engaged in explicit sexual acts); Parker v. Levy, 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974) (military articles prohibiting, inter alia, disobeying a lawful command from a superior) (quoting CSC v. Letter Carriers, 413 U.S. 548, 580-81, 93 S.Ct. 2880, 2897-98, 37 L.Ed.2d 796 (1973))
 
 
 [15]
 As Grayned noted, this third value is related to the first two. Grayned, supra, 408 U.S. at 109, 92 S.Ct. at 2299. Concern for this third value is unique to laws which seek to regulate First Amendment rights. The first two values are offended by any vague law. See, e.g., United States v. Salazar, 720 F.2d 1482 (10th Cir.1983) (considering the first two values from Grayned and holding that law prohibiting illegal possession of food stamps is not unconstitutionally vague)
 
 
 [16]
 To satisfy the scienter requirement, the prosecution must show that the defendant knew the contents of the material and its nature and character. E.g., Hamling v. United States, 418 U.S. 87, 123-24, 94 S.Ct. 2887, 2910-11, 41 L.Ed.2d 590 (1974); Hunt v. State of Oklahoma, 683 F.2d 1305, 1308 (10th Cir.1982); United States v. Sherwin, 572 F.2d 196, 201-02 (9th Cir.1977), cert. denied, 437 U.S. 909, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978)
 
 
 [17]
 Plaintiff also argues that the term minors is vague. We reject this contention. The Wichita ordinance defines minor to mean "any unmarried person under the age of eighteen (18) years." The Ginsberg Court upheld a statute defining minor to be "any person under the age of seventeen years." Ginsberg, supra, 390 U.S. at 645, 88 S.Ct. at 1283. We see no difference of constitutional magnitude between these two definitions
 Moreover, the Wichita ordinance makes it a defense to a prosecution if an honest mistake was made as to the age of the minor. This sufficiently protects commercial enterprises from whatever vagueness inheres in the definition of minor.
 
 
 [18]
 We note that in Ginsberg, supra, 390 U.S. at 641, 88 S.Ct. at 1281, the Court said that "[t]o sustain state power to exclude material defined as obscenity by Sec. 484-h requires only that we be able to say that it was not irrational for the legislature to find that exposure to material condemned by the statute is harmful to minors." (emphasis added)
 
 
 [19]
 See, e.g., Bantam Books v. Sullivan, supra, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (State Commission notified book distributors that it has found publications objectionable and that it would recommend prosecution of distribution thereof because the Commission believed books were tending to the corruption of the youth); see also Entertainment Concepts, Inc., III v. Maciejewski, 631 F.2d 497 (7th Cir.1980), cert. denied, 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981) ("penalty of suspension or revocation [of theatre's license on finding it had shown obscene film) is unconstitutional prior restraint "because decision that movie is obscene is made and license is revoked before opportunity to have a court determine if movie is obscene); Penthouse Internat'l Ltd. v. McAuliffe, 610 F.2d 1353 (5th Cir.), cert. dismissed, 447 U.S. 931, 100 S.Ct. 3031, 65 L.Ed.2d 1131 (1980) (where authorities embarked on program of arresting everyone who distributed certain publications and made this action public, causing retailers in county to cease selling publications, the conduct amounted to an informal system of prior restraint); Drive In Theatres, Inc. v. Huskey, 435 F.2d 228 (4th Cir.1970) (County Sheriff announced he would prosecute anyone showing a movie rated "R" or "X" because he believed they were obscene); Bee See Books Inc. v. Leary, 291 F.Supp. 622 (S.D.N.Y.1968) (Stationing police officers in bookstores indicated to patrons that material sold was illegal and this constituted advance censorship)
 
 
 [20]
 Section 12-4502 provides:
 Trial. All trials in municipal court shall be to the municipal judge or the municipal judge pro tem.
 Kan.Stat.Ann. Sec. 12-4502 (1982).
 
 
 [21]
 News cites the following statement in Ballew, supra, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234:
 We do not rely on any First Amendment aspect of this case in holding the five-person jury unconstitutional. Nevertheless, the nature of the substance of the misdemeanor charges against petitioner supports the refusal to distinguish between felonies and misdemeanors. The application of the community's standards and common sense is important in obscenity trials where juries must define and apply local standards. See Miller v. California, 413 U.S. 15 [93 S.Ct. 2607, 37 L.Ed.2d 419] (1973). The opportunity for harassment and overreaching by an overzealous prosecutor or a biased judge is at least as significant in an obscenity trial as in one concerning an armed robbery. This fact does not change merely because the obscenity charge may be labeled a misdemeanor and the robbery a felony.
 Id. at 241 n. 33, 98 S.Ct. at 1039 n. 33.
 
 
 [22]
 Three Kansas statutes delineate this procedure. Section 22-3610, Kan.Stat.Ann. (1981), provides:
 22-3610. Hearing on appeal. When a case is appealed to the district court, such court shall hear and determine the cause on the original complaint, unless the complaint shall be found defective, in which case the court may order a new complaint to be filed and the case shall proceed as if the original complaint had not been set aside. The case shall be tried de novo in the district court.
 (Emphasis added).
 Section 12-4601, Kan.Stat.Ann. (1982), provides:
 Appeal; stay of proceedings. An appeal may be taken to the district court in the county in which said municipal court is located:
 (a) by the accused person in all cases; and
 (b) By the city upon questions of law. The appeal shall stay all further proceedings upon the judgment appealed from.
 (Emphasis added).
 Section 22-3609(5), Kan.Stat.Ann. (1981), provides
 that in such appeals from municipal courts, trial by jury may be requested.
 (Emphasis added).
 
 
 [23]
 Plaintiff News relies, inter alia, on Callan v. Wilson, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888). In Ludwig, supra, 427 U.S. at 629-30, 96 S.Ct. at 2787-88, the Supreme Court pointed out that Callan recognized that the sources of the right to jury trial in the federal courts are several and include Art. III, Sec. 2, cl. 3, of the Constitution which requires that "[t]he trial of all Crimes ... shall be by Jury." That language was said to be capable of being read as prohibiting, in the absence of a defendant's consent, a federal trial without a jury; and the court noted that the provision is not applicable to the States. 427 U.S. at 630, 96 S.Ct. at 2788. The right of trial by jury in state court as a matter of federal constitutional law derives from the Sixth Amendment as applied to the States through the Fourteenth Amendment. Duncan v. Louisiana, 391 U.S. 145, 149-50, 88 S.Ct. 1444, 1447-48, 20 L.Ed.2d 491 (1968)
 Furthermore, Ludwig also noted that to the extent that Callan may have rested on a determination that the right to a second tier jury trial was unduly burdened by a requirement that an accused be "fully tried" without a jury at the first tier, Callan was not controlling in a Massachusetts case like Ludwig because the defendant was able to circumvent trial in the Massachusetts first tier by "admitting to sufficient findings of fact." 427 U.S. at 630, 96 S.Ct. at 2788.
 We believe that the instant Kansas case is distinguishable from Callan, as was the Massachusetts case in Ludwig. The Kansas two-tier system also permits a defendant to avoid being "fully tried" at the first tier. In a Kansas municipal court a defendant can plead guilty or no contest, Kan.Stat.Ann. Sec. 12-4406 (1982), and sentence must be imposed without unreasonable delay. Id. Sec. 12-4507. The defendant then can appeal to the district court where he "has an absolute right to a trial de novo ...," State v. Parker, 213 Kan. 229, 516 P.2d 153, 158 (1973), and the appeal stays "all further proceedings upon the judgment appealed from." Kan.Stat.Ann. Sec. 22-3609(1) (1981); see also Id. Sec. 12-4601 (1982). The defendant is entitled to "a trial de novo ... regardless of lack of error or the nature of his plea in the lower court." State v. Parker, supra, 516 P.2d at 157 (emphasis added). "The defendant's right to a new trial is unrestricted in that all he is required to do to obtain it is to appeal." Id., 516 P.2d at 158.
 We feel that both grounds used in Ludwig to distinguish Callan apply here and that the Kansas procedure is supported by Ludwig.
 
 
 [24]
 As amicus curiae, the State of Kansas argues that there can be no violation of the Sixth Amendment right to a jury trial because a violation of the ordinance is a petty offense. The amicus points out that the maximum penalty under the ordinance is a fine of not more than five hundred dollars and a jail term not to exceed one month. Although we recognize that a petty offense is "usually defined by reference to the maximum punishment that might be imposed ...," Ludwig v. Massachusetts, 427 U.S. 618, 624-25, 96 S.Ct. 2781, 2785, 49 L.Ed.2d 732 (1976), and that a maximum one month sentence and five hundred dollar fine might be light enough to be a petty offense, see Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970) (plurality); Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), we do not rest our decision on this ground
 The ordinance is uniquely subject to repetitive violation, creating the threat of substantial penalties. Under the ordinance, "[e]ach day that any violation of [the ordinance] occurs or continues shall constitute a separate offense [, and] [e]very act, thing, or transaction prohibited by [the ordinance] shall constitute a separate offense as to each item, issue or title involved...." In such circumstances, we are not inclined to rely on the "ill-defined, if not ambulatory" boundaries of the petty offense category. Duncan v. Louisiana, supra, 391 U.S. at 160, 88 S.Ct. at 1453. It is on the other grounds discussed that we uphold the ordinance.