AMERICAN BOOKSELLERS ASSOCIATION, INC., et al., Plaintiffs,

v.

Hinson McAULIFFE, et al., Defendants.

Civ. A. No. C81–1193A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 23, 1981.

J. Kirk Quillian, William N. Withrow, Jr., Atlanta, Ga., Michael A. Bamberger, New York City, for plaintiffs.

Paul C. McCommon, III, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

HORACE T. WARD, District Judge.

### I. BACKGROUND

Plaintiffs seek declaratory and injunctive relief against enforcement of Act 785 (Ga. Code Ch. 26–35) (hereafter the "Act" or "Code §§ 26–3501, 3502, 3503, 3504"). On June 30, 1981, this court granted plaintiffs' motion for a temporary restraining order to prevent enforcement of the Act. At the conclusion of the trial on the merits, this court extended the restraining order until such time as a final judgment was entered. The Act reads as follows:

*Section 1.* Code Title 26, known as the "Criminal Code of Georgia," as amended, is hereby amended by adding immediately following Code Chapter 26–34 a new Code Chapter 26–35 to read as follows:

"Chapter 26–35. Sale or display of certain materials to minors prohibited.

26–3501. Definitions. For the purposes of this Code Chapter:

(1) 'Minor' means any person under the age of 18 years.

(2) 'Illicit sex or sexual immorality' means:

(A) Human genitals in a state of sexual stimulation or arousal; or

(B) Acts of human masturbation, sexual intercourse, or sodomy; or

(C) Fondling or other erotic touching of human genitals, pubic regions, buttock, or female breast, or

(D) Display of human genitals or pubic region to a member of the opposite sex.

(3) 'Nude or partially denuded figures' means:

(A) Less than completely and opaquely covered:

(i) Human genitals; or

(ii) Pubic regions; or

(iii) Buttocks; or

(iv) Female breast below a point immediately above the top of the areola; or

(B) Human male genitals in a discernibly turgid state, even if completely and opaquely covered.

(4) 'Knowingly' means actual knowledge and 'constructive knowledge' means knowledge of facts which would put a reasonable and prudent person on notice of violation of this Code Chapter.

26–3502. Unlawful disposition of material to minors. It shall be unlawful for any person knowingly to engage in the business of selling, lending, giving away, showing, advertising for sale, or distributing to any minor; or to have in his possession with intent to engage in the said business; or otherwise to offer for sale or commercial distribution to any minor; or to display in public or at newsstands or any other business establishment frequented by minors or where minors are or may be invited as a part of the general public any motion picture or live show, or any still picture, drawing, sculpture, photograph, or any book, pocket book, pamphlet, or magazine the cover or content of which contains descriptions or depictions of illicit sex or sexual immorality or which is lewd, lascivious, or indecent, or which contains pictures of nude or partially denuded figures posed or

presented in a manner to provoke or arouse lust or passion or to exploit sex, lust, or perversion for commercial gain, or any article or instrument of indecent or immoral use.

26–3503. Unlawful admission of minors. It shall be unlawful for any person knowingly to sell to a minor an admission ticket or pass or knowingly to admit a minor to the premises whereon there is exhibited a motion picture, show, or other presentation the exhibition of which to a minor would violate any of the provisions of this Code Chapter.

26–3504. Punishment. Any person convicted for the violation of any provision of this Code Chapter shall be punished as for a misdemeanor of a high and aggravated nature."

The named defendants are charged by statute with the duty of arresting and prosecuting individuals who violate the terms of the Act, which is punishable as a misdemeanor. *See Ga.Code Ann.* § 24–2106a; *Ga.Code Ann* § 24–2813; 1978 Ga.Laws 3531, 3533; 1976 Ga.Laws 3023, 3028; 1964 Ga.Laws 3211, 3216; 1961 Ga.Laws 2461, 2462; 1965 Ga.Laws 2810, 2814.

Plaintiffs contend that the Act is facially invalid on the grounds, *inter alia*, that it is overbroad and vague, constitutes a prior restraint on speech and press, and unconstitutionally infringes upon their protected rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. Defendants contend that the plaintiffs do not have standing to litigate the Act's constitutionality, and that in any case the State has fashioned a statute to control the availability of materials to minors in a manner that does not violate constitutional standards. For the reasons below, the court holds that the Act is unconstitutionally overbroad and vague, and enforcement of the Act must be permanently enjoined.

## II. FINDINGS OF FACT

Plaintiffs are individuals and associations comprised of retailers, bookstores, distributors, publishers and writers who may engage in activities prohibited by the Act.[1] Plaintiffs' witnesses included, among others, two authors, the Acting Director of the Public Library System for Fulton County and the City of Atlanta, and the president of the Association of American Publishers, which is comprised of members who together publish 85% of the books published in the United States. In anticipation of the Act's enforcement and prior to the commencement of this action, a retailer removed books from display in her bookstores, a store buyer placed a hold on orders for new fall season books for all Rich's stores, an author made plans to cancel an autograph session to promote her book at a department store, and the American Booksellers Association, Inc. voted not to return to Georgia for its annual convention and display of books in 1984. The effect of such decisions is to deny adults as well as minors access to communicative materials.[2]

Defendants' witnesses were four citizens. The first witness testified that on behalf of the Fairview Baptist Church, she successfully petitioned a bookstore to move behind a counter magazines with cover displays such as *Penthouse*. The second witness testified that in her view, there are materials currently for sale or on display to adults and children that are obscene and should not be available. The third witness had

---

1. Plaintiffs American Booksellers Association, Inc., Association of American Publishers, Council for Periodical Distributors Associations, Freedom to Read Foundation, National Association of College Stores, Inc., Atlantic Coast Independent Distributors Association, Inc., Georgia Retail Association, Georgia Association of Convenience Stores and Georgia Grocers Association have standing to assert the First Amendment claims of their members engaged in the sale or distribution of books, magazines and newspapers. *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). *See also, Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

2. Even if only the retail aspect was examined, there are insurmountable economical and practical barriers faced by merchants who would seek to exclude minors or restrict sections of their business.

actually gathered a number of magazines that she deemed to be obscene for the purpose of presenting them to grand juries for a determination of whether they were within community standards. The three witnesses differed in their views as to what was appropriate for sale and display in stores. Defendants' fourth witness was an investigator with the Fulton County Solicitor's Office. Defendants objected to questions about his interpretation of the Act, but he was allowed to testify to talking it over with his partner and concluding that the Act covers a work with just a picture on the cover without regard to the work as a whole.

Defendants appear to contend that the Act is not overbroad because it only prohibits dissemination of "harmful, sexually explicit" materials to children. However, because the Act prohibits materials whose cover or contents contain descriptions or depictions of persons of the opposite sex without clothes, or of "illicit sex or sexual immorality which is lewd, lascivious, or indecent," many works of art and literature would have to be removed from display. These materials could include best-seller novels as well as the classic plays and sonnets of Shakespeare and volumes on the history of art.

Defendants also contend that the Act is not vague because it is clearly directed at the "display and sale of pornography to children." Further, defendants state that the prohibited materials are described in "detailed, simple, everyday words" which provide a guide for law enforcement and prevent arbitrary enforcement. There was considerable and convincing evidence, however, that many of the phrases of the Act were uncertain and without specific meaning. Witnesses testified that it was difficult to decide which "nude or partially denuded figures" would "provoke or arouse lust or passion," since people would differ in finding that a particular picture did or did not arouse lust or passion. Witnesses also testified that it was difficult or impossible to determine what materials might be "lewd, lascivious, or indecent" under the Act. The testimony of defendants' witnesses supports the finding that it is difficult to determine what is prohibited under the Act. Those witnesses had differing viewpoints on the general suitability and appropriate placement of materials. It cannot be disputed that many of the terms have more than one dictionary definition or colloquial meaning. Moreover, terms such as passion, lust, immoral and indecent have some meanings unrelated to sexual conduct. Further, the term "illicit sex or sexual immorality" is inconsistent with the definition in the Act which describes certain conduct that cannot be *per se* "illicit" or "immoral."

## III. CONCLUSIONS OF LAW

### A. *Presence of a Case or Controversy and Standing*

Plaintiffs have invoked the court's jurisdiction under 28 U.S.C. §§ 1331, 1343(3) and (4), 2201 and 2202. Defendants maintain that the plaintiffs have failed to show that they are subject to prosecution under the Act, and that therefore a "controversy" is not present and plaintiffs lack standing to litigate the Act's constitutionality. However, plaintiffs' test of the constitutionality of the Act by an action for declaratory judgment is properly before the court. The plaintiffs have demonstrated a "case or controversy" mandated by Article III of the Constitution and they have standing to challenge the Act.

The existence of a case or controversy is established where there is "sufficient immediacy and reality" to warrant the issuance of a declaratory judgment. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). In this case, the Act bears a criminal penalty, and the Supreme Court has held that

[i]t is not necessary that [a party] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.

*Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974). In-

junctive and declaratory relief is available so long as the plaintiffs demonstrate a "genuine threat of imminent prosecution." *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135, 139 (5th Cir. 1980). The fact that the statute in question has not been applied to plaintiffs does not defeat the existence of a controversy, and an anticipatory attack is appropriate where "the allegedly unconstitutional statute interferes with the way the plaintiff would normally conduct his affairs." *International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 819 (5th Cir. 1979). Plaintiffs' anticipation of prosecution led them to alter their ordinary course of conduct prior to the entry of a Temporary Restraining Order in this case. *See* Findings of Fact, *supra*. In sum, a live controversy exists in the case at bar, and plaintiffs have standing to seek declaratory and injunctive relief.[3]

Defendants apparently contend that plaintiffs have not established the so-called "injury in fact" requirement for standing. *See, e.g., Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Rules of standing have been expanded in the area of First Amendment rights and special considerations are granted to litigants seeking to preserve rights of free expression. *See, e.g., Broaderick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (permitting challenge to a statute not because the litigants' own rights are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech). *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (stating that a person is not required to show that his own conduct could not be regulated by a narrow construction of the statute under attack). Even without the

considerations discussed above, plaintiffs should not be forced to await prosecution on criminal charges before seeking a determination of the law's validity. The findings of fact support a conclusion that the Act leads to certain actions, including self-censorship, which results in economic and other injury. *See* Findings of Fact, *supra*. Further the Act raises questions of prior restraint under the First and Fourteenth Amendment. In sum, standing to seek declaratory relief is compelling in this situation.

B. *Overbreadth and the Rights of Adults*

Under the Act: "*It shall be unlawful for any person* knowingly ... *to display in public* or ... any ... business establishment frequented by minors or where minors may be invited as part of the general public*," certain defined materials "the cover or content of which" contains the proscribed "descriptions or depictions." Code § 26–3502 (emphasis added). If any of the proscribed descriptions or depictions are contained in the cover or in even an isolated part of a work, then the entire work may not be displayed where minors may frequent or be invited as part of the general public.

One of the purposes of striking down statutes which are "overbroad" is to assure the public that the dissemination of materials protected by the First Amendment will not be suppressed. The United States Supreme Court has considered the issue of what materials are constitutionally protected or not "obscene." The court set down three basic guidelines for determining whether material could be judged obscene and therefore regulated by the State:

(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;

---

**3.** It cannot be seriously contended that the case at bar presents one of the narrowly limited situations in which a federal court may choose to abstain from exercising jurisdiction in favor of state court adjudication. *See, e.g., High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980); *Int'l Society for Krishna Consciousness v. Eaves*, 601 F.2d 809 (5th Cir. 1979). The

chilling effects of uncertainty and the question of prior restraint in the First Amendment area, mitigate against abstention. Moreover, the discussion of overbreadth and vagueness will show that a state court would be unable to narrowly interpret the Act in order to make it constitutional.

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973).[4] Moreover, certain material has been specifically found to be protected expression and not obscene. *See, e.g., Jenkins v. Georgia*, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974) (holding the film *Carnal Knowledge* to be constitutionally protected); *Penthouse v. McAuliffe*, 610 F.2d 1353 (5th Cir. 1980) (holding a particular issue of the magazine *Penthouse* to be protected); *United States v. One Book Entitled Ulysses*, 72 F.2d 705 (2d Cir. 1934) (holding the book *Ulysses* by James Joyce to be protected).

■■ These standards must be applied to the Act in question notwithstanding the fact that it purports to regulate only those materials obscene as to minors. It is true that the State's interest in protecting the well-being of its youth and in aiding parents' right to rear their children permits the State a greater degree of latitude in restricting materials determined to be obscene as to minors. *Ginsberg v. New York*, 390 U.S. 629, 640, 88 S.Ct. 1274, 1281, 20 L.Ed.2d 195 (1968). However, an examination of the Act reveals that it infringes on the protected rights of adults.[5] The language includes a public display prohibition which necessarily prevents perusal by, and limits sale to, adults.[6] The Act does not

contain any standards resembling the *Miller* guidelines, and the Act's failure to incorporate such standards results in the prohibition of non-obscene, protected material. Accordingly, the Act is unconstitutional.

## C. Overbreadth and the Rights of Minors

■ Even if the Act could be said to be solely a regulation of dissemination of materials to minors, the Act would still be overbroad. Minors are accorded significant First Amendment protection.[7] The Supreme Court has upheld a statute regulating the "sale" (not display) of obscene materials to minors. *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). The statute provided in relevant part as follows:

(1) Definitions.

 \* \* \* \* \* \*

(f) "*Harmful to minors*" means that quality of any description or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it:

(i) *predominantly appeals to the prurient, shameful or morbid interest of minors, and*

(ii) *is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors, and*

(iii) *is utterly without redeeming social importance for minors.*

 \* \* \* \* \* \*

---

**4.** Georgia does have a statute regulating obscenity which appears to be modelled on the guidelines set forth in the *Miller* case. *See Ga.Code Ann.* § 26–2101.

**5.** A unanimous Supreme Court in *Butler v. Michigan*, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957) struck down a statute which made it unlawful "to make available for the general reading public ... a book ... found to have a potentially deleterious influence on youth." *Id.* The Court rejected the State's argument that the statute was justified based on an interest in protecting minors, saying that the statute was "not reasonably restricted to the evil with which it is said to deal." *Id.* at 383, 77 S.Ct. at 526.

**6.** Testimony at trial supports this plain-meaning interpretation of the Act. Practical effects include the removal from display and access a large amount of material ranging from bestseller novels to classic works of literary and artistic fame.

**7.** The State is limited to proscribing only materials which are "obscene" as to minors. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213, 95 S.Ct. 2268, 2274, 45 L.Ed.2d 125 (1975). It is worthwhile to note at this point that some "minors" may be high school seniors or even college freshmen.

(2) It shall be unlawful for any person knowingly to sell or loan for monetary consideration to a minor:

\* \* \* \* \* \*

(b) *any book, pamphlet, magazine, printed matter* however reproduced, or sound recording which contains any matter enumerated in paragraph (a) of subdivision two hereof, or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sadomasochistic abuse and *which, taken as a whole is harmful to minors.*

*Ginsberg v. New York, supra,* 390 U.S. at 645–47, 88 S.Ct. at 1283–1284 (emphasis added). The Court stated that it was constitutionally permissible for New York to accord to minors under 17 a more restricted right than that assured to adults to judge and determine for themselves what material they may read or see. *Id.* at 636–37, 88 S.Ct. at 1278–1279 (footnote omitted). When the New York statute is compared to the Georgia Act, it is clear that the Georgia Act lacks similar guidelines.[8] Specifically, the Act does not restrict a minor's access to material which *taken as a whole* (a) predominantly appeals to the prurient interest of minors; (b) contains patently offensive depictions or descriptions of sexual conduct specifically defined by applicable state law to be unsuitable for minors; and (3) is utterly without redeeming social value (or lacks serious literary, artistic, political or scientific value).[9] Accordingly, the Act is unconstitutional.[10]

---

**8.** It should be noted that the Georgia Legislature repealed a statute containing the *Ginsberg* standards and did not include them in the new Act. *See* Ga.Laws 1969, p. 222 (*Ga.Code Ann.* § 26–9901a); repealed by Section 2 of the Act.

**9.** The third part of the *Ginsberg* test may have to be reformulated in light of *Miller.*

**10.** The defendants argue that the *Ginsberg* standards or modifications thereof are not the only possible guidelines for fashioning a statute. However, it cannot be denied that *Ginsberg* is an appropriate standard by which laws regulating distribution of sexually-related materials to minors must be measured. In any case, the language of the Act goes far beyond the *Ginsberg* limits and is similar to statutes found to be unconstitutional abridgements of minors'

---

**D. *Vagueness***

The Act prohibits dissemination of works which may contain written passages or pictures which describe "sexual immorality" or which are "lewd" or "lascivious" or "indecent", or which are designed "to provoke or arouse lust of passion" or to "exploit sex, lust, or perversion for commercial gain." These phrases are not defined in the statute.

 The purpose of striking down statutes which are "vague" is to prevent the arbitrary enforcement of laws that fail to give officials or the public any notice of what is prohibited. In analyzing the Act, the court must apply the same constitutional standards relating to vagueness that it would apply if it were dealing with a statute pertaining to adults. The Supreme Court has stated:

> the permissible extent of vagueness is not directly proportional to, or a function of, the extent of the power to regulate or control expression with respect to children.

*Interstate Circuit, Inc. v. City of Dallas, supra,* 390 U.S. at 689, 88 S.Ct. at 1306. The findings of fact support a ruling that the Act's language is vague as to materials prohibited and the manner of complying with the Act. Moreover, the Supreme Court has rejected standards for sexually related materials, such as those adopted by this Act, that went beyond the guidelines embodied in legal precedent. *See Inter-*

---

rights. *See, e.g., Rabeck v. New York,* 391 U.S. 462, 88 S.Ct. 1716, 20 L.Ed.2d 741 (1968); *Interstate Circuit, Inc. v. City of Dallas,* 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). In particular, the Supreme Court has consistently required that expression may be regulated, even as to minors, only if the work is "taken as a whole." *See, e.g., Erznoznik v. City of Jacksonville,* 422 U.S. 205, 213–14, 95 S.Ct. 2268, 2274–2275, 45 L.Ed.2d 125 (1975). The Act is at odds with this requirement in that it declares unlawful material whose *"cover or contents"* contains descriptions or depictions of certain sexual conduct or *"contains pictures"* of certain nudity. Code § 26–3502.

58

state Circuit, Inc. v. City of Dallas, supra, 390 U.S. at 684, 686–690, 88 S.Ct. at 1303, 1304–1306. Further, the Supreme Court has held that certain terms used in the Act are without a definite meaning and are therefore unconstitutionally vague. *See, e.g., Interstate Circuit, Inc. v. City of Dallas, supra* ("sexual promiscuity"); *Rabeck v. New York, supra* ("magazines which would appeal to the lust of persons under the age of eighteen years"). In sum, Justice Harlan's words are appropriate:

> [O]ne man's vulgarity is another man's lyric. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual.

*Cohen v. California*, 403 U.S. 15, 25, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971).[11]

██ In light of the foregoing, the court concludes as a matter of law that the Act is invalid for overbreadth and vagueness. Further, it cannot be saved by a narrowing judicial construction. The defendants maintain that the Act is designed to "protect children from sexually explicit pornography." That phrase is not contained in the Act. This court could not change the meaning of the Act without changing the language entirely. Rewriting a statute is not the province of the judiciary. *See U. S. v. Great Northern Ry. Co.*, 343 U.S. 562, 72 S.Ct. 985, 96 L.Ed. 1142 (1952). In making the rulings in this opinion, the court is mindful of public concern for the youth of the state. However, the Act is not drawn to comport closely with this concern and the applicable constitutional guidelines. An order will be entered in accordance with this opinion.

---

11. Plaintiffs' reliance on the scienter requirement is misplaced. Plaintiffs appear to contend that the Act is not vague because of the provision that a person violates the Act only if he does so with actual or constructive knowledge. However, the language of the Act is incompatible with a scienter requirement. A person could not "knowingly" violate the terms when he or she has no notice of the conduct prohibited by the Act.