AMERICAN BOOKSELLERS
ASSOCIATION, et al.,
Plaintiffs.

v.

Charles T. STROBEL, Director of
Public Safety, et al., Defendants.

Civ. A. No. 85–816–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 10, 1985.

Victor Glasberg, Alexandria, Va., for plaintiffs.

Robert L. Murphy, Asst. City Atty., Alexandria, Va., for Strobel.

Charles G. Flinn, Ara L. Tramblian, Cynthea L. Perry, Arlington, Va., for Stover.

Richard B. Smith, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

*Introduction*

This matter comes before the Court on a trial to the bench on September 5, 1985. Plaintiffs challenge the constitutionality of the 1985 Amendment to § 18.2–391 of the Code of Virginia. The relevant statutes are set out below, and the challenged portion (hereafter "the amendment") is highlighted:

§ 18.2–390. Definitions.—As used in this article:

(1) "Juvenile" means a person less than eighteen years of age.

(2) "Nudity" means a state of undress so as to expose the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, of the depiction of covered or uncovered male genitals in a discernibly turgid state.

(3) "Sexual conduct" means actual or explicitly simulated acts of masturbation, homosexuality, sexual intercourse, or physical contact in an act of apparent sexual stimulation or gratification with a person's clothed or unclothed genitals, public area, buttocks or, if such be female, breast.

(4) "Sexual excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

(5) "Sadomasochistic abuse" means actual or explicitly simulated flagellation or torture by or upon a person who is nude or clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound or otherwise physi-

cally restrained on the part of one so clothed.

(6) "Harmful to Juveniles" means that quality of any description or representation, in whatever form, or nudity, sexual conduct, sexual excitement, or sadomasochistic abuse, when it (a) predominately appeals to the prurient, shameful or morbid interest of juveniles, (b) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for juveniles, and (c) is, when taken as a whole, lacking in serious literary, artistic, political or scientific value for juveniles.

(7) "Knowingly" means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of both (a) the character and content of any material described herein which is reasonably susceptible of examination by the defendant, and (b) the age of the juvenile, provided however, that an honest mistake shall constitute an excuse from liability hereunder if the defendant made a reasonable bona fide attempt to ascertain the true age of such juvenile.

§ 18.2–391. Unlawful acts.—(a) It shall be unlawful for any person knowingly to sell or loan to a juvenile, *or to knowingly display for commercial purpose in a manner whereby juveniles may examine and peruse:*

(1) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts sexually explicit nudity, sexual conduct or sadomasochistic abuse and which is harmful to juveniles, or

(2) Any book, pamphlet, magazine, printed matter however reproduced or sound recording which contains any matter enumerated in paragraph (1) of this subsection, or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sadomasochistic abuse and which taken as a whole, is harmful to juveniles.

(b) It shall be unlawful for any person knowingly to sell to a juvenile an admission ticket or pass, or knowingly to admit a juvenile to premises whereon there is exhibited a motion picture, show or other presentation which, in whole or in part, depicts sexually explicit nudity, sexual conduct or sadomasochistic abuse and which is harmful to juveniles or to exhibit any such motion picture at any such premises which are not designed to prevent viewing from any public way of such motion picture by juveniles not admitted to any such premises.

(c) It shall be unlawful for any juvenile falsely to represent to any person mentioned in subsection (a) or subsection (b) hereof, or to his agent, that such juvenile is eighteen years of age or older, with the intent to procure any material set forth in subsection (a), or with the intent to procure such juvenile's admission to any motion picture, show or other presentation, as set forth in subsection (b).

(d) It shall be unlawful for any person knowingly to make a false representation to any person mentioned in subsection (a) or subsection (b) hereof or to his agent, that he is the parent or guardian of any juvenile, or that any juvenile is eighteen years of age, with the intent to procure any material set forth in subsection (a), or with the intent to procure such juvenile's admission to any motion picture, show or other presentation, as set forth in subsection (b).

(e) Violation of any provision hereof shall constitute a Class 1 misdemeanor.

The named defendants are charged by law with the duty of enforcing the challenged portion of the statute. The Attorney General of Virginia has exercised his right to intervene pursuant to 28 U.S.C. § 2403(b).

The plaintiffs here are five bookstore trade associations, two individual bookstores and two individual residents of the City of Alexandria. They contend that the 1985 Amendment is facially invalid in that it unconstitutionally infringes upon rights protected by the first amendment, and in

that it constitutes a prior restraint upon free speech. Defendants argue that there is no case or controversy between themselves and the plaintiffs, that plaintiffs do not have standing to challenge the Amendment, that the Court should abstain from considering the constitutionality of the Amendment, and that in any event the Amendment does not violate the first amendment.

Pursuant to Rule 52(a), the Court hereby makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Helen Ross is the owner of plaintiff Ampersand Books, an Alexandria bookstore belonging to the American Booksellers Association. Ampersand Books carries approximately 12,000–13,000 different titles at any one time, with multiple copies of most titles. The books are arranged in sections according to subject matter, including children's books, science fiction, mystery, fiction, romance, art, health, photography and best sellers. Children frequently shop at Ampersand Books, often with their parents, and sales of children's books constitute approximately 10% of Ampersand's business. In terms of its size, structure and clientele, Ampersand is similar to many other Northern Virginia bookstores that carry a wide variety of titles.

Carol Johnson is the owner of plaintiff Books Unlimited, an Arlington bookstore that belongs to the American Booksellers Association. Books Unlimited is somewhat atypical in that it relies more heavily upon sales of children's books than other area bookstores. However, approximately 10–15% of its books may not be displayed under the new law. The store's books are arranged by subject matter in a manner similar to the structure at Ampersand Books.

In all bookstores, the display of a particular book, and the manner in which it is displayed play a critical role in determining how many copies the bookstore will sell. Customers often become familiar with a book, and desire to purchase it only after browsing and looking through the shelves. Customers are generally hesitant about asking for help in locating books, and they are especially reluctant to ask for books that have a strong sexual content. Therefore, at least one copy of every title carried by Ampersand books is on display.

Based upon the testimony of two local bookstore owners, and after carefully reviewing the exhibits introduced from their stores, the Court concludes that the average general bookstore in the Northern Virginia area carries a significant percentage of materials (varying between 5–25%) that are "harmful to juveniles" as defined in the statute. The books that fall within the restrictions come from a wide variety of subject matters, such as romance, fiction, photography, best sellers, science fiction and health. Most of these books come within the statute's fairly broad ambit on the basis of their content. However, the Court finds that the covers of some books and magazines, as sexually explicit "pictures" and "photographs" under the statute, are also covered by the statute.

In order to comply with the 1985 amendment, bookstores are faced with approximately four choices. First, a bookstore could simply bar all persons under the age of 18 from its store. However, this alternative would certainly have a dramatic impact upon the store's sales of children's books. Moreover, such a move would create the impression that the store deals primarily in "adults only" or pornographic material, which would have a devastating impact upon the store's business.

Second, the store could create an "adults only" section in order to display the proscribed material. However, the books covered by the statute come from a wide variety of literary disciplines, such as fiction, romance, photography, and best sellers; books which are "harmful to minors" are mixed into so many different subject areas that it would be almost impossible for booksellers to sort through the books to create a new section. An "adults only" area would be costly to create, difficult to monitor, and would create a great deal of confu-

sion in the mind of a consumer searching for a particular book. Moreover, many adults would be reluctant and embarrassed to browse in an "adults only" corner of the store, and sales of books placed in this new area would undoubtedly drop.

Third, the bookstore could simply limit its inventory to books not regulated by the new law. However, since the new law would restrict the display of a number of very popular books, including some best sellers, this alternative is not commercially feasible. In addition, this alternative would create practical difficulties in ordering new books because bookstores rarely have the opportunity to review books before ordering them.

Finally, the bookstore could place all of the prescribed material behind a counter where they would not be displayed to the public. However, due to the large number of books involved, this alternative would require bookstores to significantly alter the structure of their stores. Moreover, since the display of books is so crucial to their sale, such a move would substantially hurt sales.[1]

## CONCLUSIONS OF LAW

### A. Case or controversy and standing requirements

■ Initially, the Court must determine whether an actual case or controversy exists, and whether the plaintiffs have standing to challenge the constitutionality of the new amendment. The "case or controversy" doctrine does not mean that a plaintiff must be arrested or prosecuted before he or she may challenge the constitutionality of a statute. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). However, a plaintiff must be able to assert a reasonable fear of enforcement of the statute, and that therefore the allegedly unconstitutional statute interferes with how the plaintiff ordinarily conducts his or her affairs. *Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d 497 (7th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981); *International Society for Krishna Consciousness v. Eaves,* 601 F.2d 809 (5th Cir. 1979).

■ Similarly, in order to satisfy the requirement of standing, a litigant must demonstrate that he or she is somehow adversely affected by the challenged statute. This requirement is not satisfied if the party merely asserts the common interest of society as a whole in having a judicial determination on the matter. In short, a litigant must demonstrate a "personal stake" in determining the validity of the law, so that the controversy before the Court is both "real and substantial." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

Where first amendment rights are at stake, case or controversy and standing requirements have been relaxed so that litigants may preserve rights of free expression. *See Secretary of State v. Munson,* — U.S. —, 104 S.Ct. 2839, 81 L.Ed.2d 786, 796 (1984) ("where there is a danger of chilling free speech, the concern that constitutional adjudication be avoided wherever possible may be outweighed by society's interest in having the statute challenged"); *see also Broadrick v. Oklahoma,* 413 U.S. 601, 611, 93 S.Ct. 2908, 2847, 37 L.Ed.2d 830 (1973) (challenge to statute restricting political activities of state civil servants permitted since the statute's existence may discourage persons not before the Court from engaging in protected speech). This relaxed stance reflects the treasured position occupied by the first amendment, and the consequent importance of having first amendment controversies adjudicated promptly.

■ The evidence in the record clearly establishes that a real controversy exists and that the individual bookstores have standing to challenge the 1985 amendment. The bookstores have adequately demonstrated a reasonable fear that the chal-

---

1. The Court notes with some concern that, with respect to most of the above alternatives, book-stores might not be able to continue their practice of hiring minors for part time positions.

lenged amendment will be enforced against them, that the amendment raises substantial first amendment concerns, and that the amendment has caused and will continue to cause direct, immediate economic injury to their businesses. Furthermore, the retail associations also have standing in this matter because they are representatives of bookstores who are suffering immediate or threatened injury as a direct result of the challenged statute. *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (trade association has standing to bring suit on behalf of its members if its members would otherwise have standing, if the interests to be protected are germane to the purpose of the organization, and if the suit does not require the participation of the individual members); *see also Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

The individual plaintiffs, Jessica Bush and her minor daughter Amy Bush do not have standing to challenge the amendment. Jessica and Amy Bush claim that they have standing simply as adult and juvenile members of the community. However, neither has alleged that they would be subject to prosecution under the challenged amendment, nor do they allege any economic loss as a result of the new law. The Bushes have failed to assert anything more than an abstract interest in the availability of reading materials in bookstores, an interest which is no different from the interests of all other local citizens who patronize bookstores. *See American Booksellers Association v. Rendell*, 481 A.2d 919, 932 (Pa.Super.1984).

### B.  Abstention

Defendant contends that the Court should abstain in this case so that state courts may be given the opportunity to construe the 1985 amendment and determine its constitutionality. However, this case does not fit within any of the three narrowly defined areas where abstention by a federal court may be appropriate. Specifically, state court resolution of this matter would not render unnecessary, nor substantially modify the federal constitutional questions; there are simply no difficult or unclear issues of state law raised here. *See Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (abstention may be appropriate where the case presents unsettled questions of state law); *see also Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (abstention may be appropriate where there is a constitutional challenge to ongoing state criminal proceedings); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (abstention may be appropriate where there is an adequate state regulatory forum for review of the claims, and where that forum is the most appropriate forum due to the presence of basic state policy considerations). Further, the significant first amendment questions raised by the plaintiffs' claims clearly make abstention inappropriate. *See American Booksellers Association v. McAuliffe*, 533 F.Supp. 50 (N.D.Ga.1981) (declaring Georgia statute restricting display of certain sexually explicit materials unconstitutional).

### Overbreadth

As a general matter, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). The Supreme Court has upheld restrictions based upon content "only in the most extraordinary circumstances." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 65, 103 S.Ct. 2875, 2879, 77 L.Ed.2d 469 (1983). Therefore, the challenged amendment, which clearly restricts access to certain materials on the basis of their content, must be carefully examined to ensure that it does not impermissibly infringe upon first amendment values.

The sole justification offered by the defendants for the challenged amendment is

the government's interest in shielding minors from certain adult reading material.[2] The Supreme Court, recognizing that the state may play some role in promoting the moral well-being of its youth, has upheld the constitutionality of laws which prohibit the *sale* of materials which, though not obscene as to adults, were deemed to be "harmful to minors." *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).[3] The defendants assert that the 1985 amendment, which prohibits the *display* of non-obscene material in a manner whereby one under the age of 18 *may* peruse it, is constitutionally permissible under *Ginsberg.*

█ The Court disagrees. In promoting the morals of its youth by restricting their access to certain communications, the state may not create barriers which simultaneously place substantial restrictions upon an adult's access to those same protected materials. In *Butler v. Michigan,* 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957), the Supreme Court struck down a Michigan law which made it unlawful for anyone to "make available for the general reading public ... a book ... found to have a potentially deleterious influence on youth." 352 U.S. at 382–83, 77 S.Ct. at 525. Writing for a unanimous Court, Justice Frankfurter rejected a contention similar to the one offered by the defendants here:

> The state insists that, by thus quarantining the general reading public against books not too rugged for grown men and women in order to shield juvenile innocence, it is exercising its power to promote the general welfare. Surely, this is to burn the house to roast the pig.

352 U.S. at 383, 77 S.Ct. at 525. Here, as in *Butler,* the challenged statute is "not reasonably restricted to the evil with which it is said to deal." *Butler,* 352 U.S. at 383, 77 S.Ct. at 526.

Over 25 years after *Butler,* in *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983), the Supreme Court struck down a federal statute which made it illegal to mail to the public unsolicited materials dealing with contraceptives, venereal disease and family planning. The defendant in *Bolger,* like the defendant in *Butler,* argued that the law should be upheld because it protected minors from materials that their parents might find objectionable. The Supreme Court again unanimously rejected this contention:

> We have previously made clear that a restriction of this scope is more extensive than the Constitution permits, for the government may not "reduce the adult population ... to reading only what is fit for children." *Butler v. Michigan,* 352 U.S. 380, 383, 77 S.Ct. 524, 526, 1 L.Ed.2d 412 (1957). The level of discourse reaching a mailbox simply cannot be limited to that which would be suitable for a sandbox.

463 U.S. at 73, 103 S.Ct. at 2884. *See also Home Box Office v. Wilkinson,* 531 F.Supp. 987 (D.Utah 1982) (statute prohibiting the distribution of sexually explicit materials over cable television declared unconstitutional on grounds of overbreadth).

█ The level of discourse reaching commercial bookshelves cannot be limited to what might be appropriate for an elementary school library. *See American Booksellers Association, Inc. v. McAuliffe,* 533 F.Supp. 50 (N.D.Ga.1981); *Tattered Cover v. Tooley,* 696 P.2d 780 (Col.Sup.Ct.1985); *American Booksellers Association, Inc. v. Superior Court,* 129 Cal.App.3d 197, 181 Cal.Rptr. 33 (1982). The state's purpose in passing the challenged amendment, however praiseworthy, cannot be pursued by means which effectively stifle an adult's access to communciations he or she is entitled to receive. While the intended effect of the amendment is to prevent examina-

---

**2.** Obviously, the materials regulated by the Amendment are not "obscene" under *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973), and are therefore entitled to first amendment protection.

**3.** The *Ginsberg* decision, as modified by *Miller,* has been codified by Virginia in Virginia Code § 18.2–390, 391 (1984).

tion and perusal by minors of certain "harmful" materials, the unavoidable collateral effect of the law is to severely limit the ability of adults to examine these protected materials. This, in turn, severely limits sales to adults, since the evidence establishes that adults generally become acquainted with these materials, and desire to purchase them, only if they are readily visible.

Faced with the restrictions in the display amendment, a bookstore would be forced either to discontinue carrying the restricted materials, ban minors from its store altogether, or restructure their stores and move a significant portion of its inventory. Due to the wide sweep of the statute, a number of classic literary works, romances, and best sellers would have to be placed behind the counter or into monitored "adults only" areas. As noted earlier, these alternatives are commercially impractical. Moreover, they force adults to use other means (beyond simply browsing through the shelves) to find out about protected literature. Finally, they might also require the adult to go into a stigmatized "adults only" area to examine the materials; these extra steps would certainly be embarrassing to many adults, and they may very well inhibit many individuals from exercising their right to examine and purchase the material.

The Attorney General suggests that a bookseller may comply with the amendment by simply placing tags on the prescribed books, or by placing them on special "adult only" racks. This interpretation completely ignores the plain language of the new law, which restricts the *display* of the proscribed materials, not simply their perusal. If the proscribed material is on a shelf in an area where juveniles are permitted to roam, then the item is "on display" where the juvenile "may" examine it even if the item is tagged. Indeed, since the material may well have pictures or passages "harmful to minors" on its front or back cover, the law is violated if a person under the age of 18 can simply see it. The amendment makes no provision for tags, adults only racks or blinder racks.

■ The Attorney General also urges the Court to uphold the challenged display provision as a valid time, place and manner restriction on speech. The "crucial question" in examining a regulation under the time, place and manner test is "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). The manner of expression here— the display of the books or other materials—is unquestionably compatible with the activity of the places affected by the regulation—bookstores, art galleries, convenience stores and department stores. Because the amendment does not regulate expression incompatible with the normal activity of the affected businesses, the amendment here is not a valid time, place and manner restriction.[4]

■ Moreover, a valid time, place or manner restriction must serve a substantial governmental interest, and it must be drawn with narrow specificity to be no more restrictive of protected communications than necessary.[5] *Grayned v. City of Rockford,* 408 U.S. 104, 116–17, 92 S.Ct. 2294, 2303–04, 33 L.Ed.2d 222 (1972); *Davenport v. City of Alexandria,* 710 F.2d 148 (4th Cir.1983). While the purpose of the restriction here is to serve a substantial governmental interest, the restriction is far broader than necessary. Without passing upon the constitutionality of any alterna-

---

**4.** To the extent that the Court in *M.S. News Co. v. Casado,* 721 F.2d 1281 (10th Cir.1983) held that a somewhat similar Wichita City ordinance was a valid time, place and manner restriction, the Court respectfully disagrees.

**5.** Although valid time, place and manner restrictions must generally be content neutral, the Supreme Court has carved out an exception to this general rule where, as here, the restriction is targeted toward a juvenile audience. *See Young v. American Mini Theatres,* 427 U.S. 50, 85–86, 96 S.Ct. 2440, 2459–60, 49 L.Ed.2d 310 (1976) (Justice Stewart, dissenting).

tive measures, the Court notes that a law simply forbidding the actual perusal by minors of these harmful materials, or at least requiring the use of "blinder racks,"[6] would be far narrower than the amendment challenged here.[7]

Plaintiffs also challenge the Virginia law on the grounds that it constitutes a prior restraint upon protected speech, and that it unreasonably restricts the access of more mature minors to material which is not obscene as to them. The Court's rulings on plaintiff's overbreadth claim makes it unnecessary to reach the merits of these contentions.

In light of the foregoing, the Court concludes as a matter of law that the 1985 amendment to Virginia Code § 18.2–391(a) is facially invalid for overbreadth. Moreover, it cannot be saved by any narrowing construction. Therefore, the defendants are hereby PERMANENTLY ENJOINED from enforcing the amendment.

An order will be entered in accordance with this opinion.

---

**6.** In the *Casado* case, the 10th Circuit upheld the constitutionality of a display ordinance somewhat similar to the regulation before this Court. However, in *Casado,* the challenged ordinance permitted the display of materials "harmful to minors" so long as the materials were kept behind "blinder racks" that covered the lower two-thirds of the material from view.

**7.** It may be that laws prohibiting the sale of these materials are already the narrowest permissible restrictions, and that displays of such materials are simply a part of the "multitude of external stimuli" in sensitive areas with which parents must cope. *See Bolger,* 463 U.S. at 73, 103 S.Ct. at 2886.