802 F.2d 691
 AMERICAN BOOKSELLERS ASSOCIATION, INC.; Association of
American Publishers; Council for Periodical Distributors
Assoc.; International Periodical Distributors Assoc., Inc.;
National Assoc. of College Stores, Inc.; Books Unlimited,
Inc.; Ampersand Books; Appellees,
v.
COMMONWEALTH OF VIRGINIA, Appellant.
and
Charles T. Strobel; William K. Stover, Defendants.
AMERICAN BOOKSELLERS ASSOCIATION, INC.; Association of
American Publishers; Council for Periodical Distributors
Assoc.; International Periodical Distributors Assoc., Inc.;
National Assoc. of College Stores, Inc.; Books Unlimited,
Inc.; Ampersand Books; Appellees,
v.
William K. STOVER, Appellant,
and
Charles T. Strobel, Defendant.
AMERICAN BOOKSELLERS ASSOCIATION, INC.; Association of
American Publishers; Council for Periodical Distributors
Association; International Periodical Distributors
Association, Inc.; National Association of College Stores,
Inc.; Books Unlimited, Inc. and Ampersand Books, Appellants,
and
Amy Bush and Jessica Bush, Plaintiffs,
v.
Charles T. STROBEL; William K. Stover and the Commonwealth
of Virginia, Appellees.
 Nos. 85-1961, 85-1999 and 85-2284.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1986.
Decided Sept. 30, 1986.
Rehearing and Rehearing In Banc Denied
Sept. 26, 1986.
 
 Ara L. Tramblian, Asst. Co. Atty. (Charles G. Flinn, Arlington Co. Atty., Arlington, Va., on brief), for appellant/cross-appellee William K. Stover.
 Richard B. Smith, Asst. Atty. Gen. (William G. Broaddus, Mary Sue Terry, Attys. Gen., John H. McLees, Jr., Asst. Atty. Gen., Richmond, Va., on brief), for appellant/cross-appellee Com. of Va.
 Michael A. Bamberger (David C. Burger, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, New York City, on brief), for appellees/cross-appellants.
 Before PHILLIPS, and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 SPROUSE, Circuit Judge:
 
 
 1
 This appeal concerns the constitutionality of a 1985 amendment to a Virginia statute which attempts to shield juveniles from the commercial display of sexually explicit material. The defendants, the Commonwealth of Virginia and William K. Stover, Chief of Police for Arlington County, Virginia, appeal from the district court's order declaring unconstitutional the amendment to Virginia Code Sec. 18.2-391(a) and permanently enjoining them from enforcing the amendment.[1] The plaintiffs, the American Booksellers Association, Inc., four other trade associations, and two retail bookstores (hereinafter collectively referred to as the Booksellers) appeal from the district court's denial of attorneys' fees. We affirm the district court's decision that the amendment is unconstitutional, but reverse its denial of plaintiffs' attorneys' fees.
 
 
 2
 The pre-amendment statute, for some years, has prohibited the sale to minors of sexually explicit materials defined as harmful to juveniles, including some materials which are not obscene as to adults. The constitutionality of that underlying statute is not in issue in this appeal. The Virginia General Assembly amended the statute, however, effective July 1, 1985, making it unlawful to knowingly display these materials "in a manner whereby juveniles may examine and peruse" them. Va.Code Sec. 18.2-391(a) (Supp.1985).[2] Approximately two weeks after the effective date of the amendment, and prior to any enforcement action by the defendants, the Booksellers brought this action asserting that the amendment is facially unconstitutional.[3] They sought declaratory and injunctive relief to prevent its enforcement as well as costs and attorneys' fees pursuant to 42 U.S.C. Sec. 1988 (1982). After a hearing on the defendants' motion to dismiss, the district court declared the amendment unconstitutional and enjoined its enforcement.
 
 
 3
 The Commonwealth and Stover appeal the district court's finding that the Booksellers had standing to attack the amendment and the Commonwealth also appeals that court's ruling that the amendment is facially unconstitutional as violative of the first amendment.
 
 I.
 
 4
 To survive an initial attack challenging standing, a plaintiff must show that an actual controversy exists and must allege a "personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The Commonwealth and Stover contend that the Booksellers have not demonstrated an actual case or controversy. They point out that there has been no proof that the Booksellers have been prosecuted, threatened with prosecution, or have detrimentally changed their behavior as a result of the amendment.
 
 
 5
 We agree with the district court that the Booksellers have standing to challenge the amendment. The Booksellers have shown a legitimate concern that the amendment will be implemented so as to infringe on their first amendment right of "free speech." This is more than a concern merely "held in common by all members of the public." Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 220, 94 S.Ct. 2925, 2931, 41 L.Ed.2d 706 (1974). There is little doubt that compliance with the amendment threatens the Booksellers with economic injury; each of the methods of compliance suggested by the Commonwealth would interfere with the Booksellers' marketing methods. See Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Additionally, the mere display of proscribed materials in a manner allowing juveniles access violates the statute. To avoid criminal liability, the Booksellers must evaluate the content of all types of printed matter and then prevent minors from having the opportunity to examine and peruse those materials deemed harmful.
 
 
 6
 If the Booksellers attempt to comply with the amendment, they face economic injury; if the booksellers continue to conduct their business in their normal fashion, they face the prospect of prosecution.[4] Particularly applicable here is the rule that, in order to maintain standing in a first amendment case, a plaintiff does not have to expose himself to prosecution when a statute imposes a criminal penalty. When the threat of prosecution is not chimerical, it is sufficient that he claims that the statute deters the exercise of constitutionally protected rights. Steffel v. Thompson, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974).[5]
 
 
 7
 In short, we find that the Booksellers meet the requirements for standing in this case.
 
 II.
 
 8
 Turning to the underlying first amendment issue, there is no question that a state government has an interest in shielding minors from some sexually explicit materials which are not considered obscene as to adults. Ginsberg v. New York, 390 U.S. 629, 638, 88 S.Ct. 1274, 1279, 20 L.Ed.2d 195 (1968). The Ginsberg Court upheld a New York law prohibiting the sale to minors of sexually explicit materials which were defined as harmful to juveniles. The pre-amendment Virginia statute was modeled after the statute sanctioned in Ginsberg.[6] The Booksellers, however, do not attack the constitutionality of the pre-amendment statute. They assert, instead, that the display provision of the amendment will unreasonably restrict adult access to materials protected under the first amendment. See American Booksellers Association, Inc. v. McAuliffe, 533 F.Supp. 50, 56 (N.D.Ga.1981).
 
 
 9
 The Commonwealth concedes that adults' first amendment rights cannot be limited by the restrictive obscenity standards which may be applied to juveniles. Butler v. Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957).[7] It contends, nevertheless, that the stricter standards of the amendment's display provision can be applied so as to screen juveniles from potentially harmful material without infringing on the rights of adults to have access to the same sexually explicit material. It argues that the district court erred when it found that the statute under review does not accommodate the state's interest in protecting juveniles in the least restrictive fashion and that the amendment is facially overbroad.
 
 
 10
 A court will not find a statute facially invalid unless: (1) it cannot easily be given a narrowing construction; and (2) it has both a real and substantial deterrent effect on protected expression. Erznoznik, 422 U.S. at 216, 95 S.Ct. at 2276. The Commonwealth urges that narrowing constructions were readily available to the district court. Specifically, it asserts that the prohibited materials can still be stocked by the Booksellers so long as the materials are displayed in a manner whereby juveniles cannot examine and peruse them.
 
 
 11
 The Commonwealth asserts that the amendment is a valid time, place, and manner regulation such as the zoning ordinance upheld in Young v. America Mini Theatres, Inc., 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). While it is true that the Supreme Court has upheld reasonable time, place, and manner restrictions, the speech so regulated either occurred in the public forum or was subject to a general zoning ordinance. Clark v. Community for Creative Nonviolence, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); Young, 427 U.S. 50, 96 S.Ct. 2440. The state's interest in regulating activities in public places is, of course, of a somewhat different character than its interest in what goes on in a private bookstore. Even under the time, place, and manner analysis, however, the amendment must fall because the governmental interest asserted in this type of regulation must not involve the content of the regulated speech. Clark, 468 U.S. 288, 104 S.Ct. at 3065. There is no question that the Virginia amendment imposes restrictions based on the content of publications.
 
 
 12
 The amendment's most serious flaw, however, is its breadth. A demonstrably overbroad regulation may act as a deterence to the exercise of constitutionally protected rights. Erznoznik, 422 U.S. at 216. In the instant case, the amendment's language is broad, and it does not provide any potential defenses or methods of compliance.[8] The Commonwealth, nonetheless, asserts that compliance with the amendment would not deter the exercise of first amendment rights. It stresses that only a small percentage of the inventory in book stores could be classified as harmful to juveniles and argues that retail outlets can readily modify their display methods to comply with the amendment. Because of its recent passage, no one has yet been prosecuted under the Virginia amendment. Additionally, there was little specific evidence presented below, making it difficult to determine what percentage of materials in a given retail outlet might be subject to the amendment's restrictions.[9] It cannot be gainsaid, however, that book retailers face a substantial problem attempting to comply with the amendment in ordering, reviewing, and displaying publications for sale. See American Booksellers Association, Inc. v. Webb, 590 F.Supp. 677, 692-93 (N.D.Ga.1984).
 
 
 13
 The Commonwealth suggests a number of ways by which the book retailer may solve these problems, but none appears to us to significantly ease the first amendment burden created by the amendment. The display methods suggested by the Commonwealth appear either insufficient to comply with the amendment or unduly burdensome on the first amendment rights of adults, and, to this extent, we disagree with the rulings in M.S. News and Upper Midwest Booksellers. Placing "adults only" tags on books and magazines or displaying the restricted material behind blinder racks or on adults only shelves freely accessible in the main part of the store would not stop any determined juvenile from examining and perusing the materials. The statute requires that such materials not be displayed so that minors may have access to them. Forcing a bookseller to create a separate, monitored adults only section, requiring that the materials be sealed, or taking the materials off display and keeping them "under the counter" unreasonably interferes with the booksellers' right to sell the restricted materials and the adults' ability to buy them. Many adults, for a variety of reasons, would not enter a display area identified as "for adults only." Selling materials in sealed wrappers or from under the counter would unrealistically limit access by adults and would significantly interfere with the Booksellers' business practices. Contrary to the Commonwealth's argument that the scienter requirement in the statute allows a book retailer to avoid the hazards of self censorship, each of these suggested practices would require the seller to read and make a content based judgment on each item on his shelves in order to select the ones requiring special treatment. More importantly, a retailer cannot rely on the amendment to guide him in deciding what are the least restrictive modifications in display methods which would be sufficient to satisfy the statute.
 
 
 14
 In sum, we feel that the amendment discourages the exercise of first amendment rights in a real and substantial fashion, and that it is not readily subject to a narrowing interpretation so as to withstand an overbreath challenge. We, therefore, affirm the district court's judgment declaring the challenged amendment unconstitutional and enjoining its enforcement.
 
 III.
 
 15
 The Booksellers appeal the district court's denial of their application for attorneys' fees pursuant to 42 U.S.C. Sec. 1988. The prevailing party in a Sec. 1983 action should ordinarily recover attorneys' fees absent special circumstances which would render the award unjust. Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The district court's normally broad discretion in this area is narrowly limited both by the reasoning of Newman and by Congress' later explicit approval of that standard in enacting the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. Sec. 1988. Bonnes v. Long, 599 F.2d 1316, 1318 (4th Cir.1979). In denying the plaintiffs' application, the district court noted that the Booksellers could pass on the cost of litigation to their customers in the form of higher prices, that the Commonwealth acted in good faith, and that the Booksellers were the primary beneficiaries of the action striking down the statute. The court recognized that none of these factors alone would constitute the necessary special circumstance to justify denial of attorneys' fees. It held, however, that "with all these factors combined, the Court finds it more equitable to let the costs lie where they land." The district court cited no authority for the action, and we find none.
 
 
 16
 Although the Booksellers certainly benefit from the results of this litigation, the citizens of Virginia will likewise continue to enjoy unfettered freedom of expression. We do not find it unjust that the taxpayers will have to bear the costs of the award. Johnson v. State of Mississippi, 606 F.2d 635, 637 (5th Cir.1979).
 
 
 17
 As to defendants Strobel and Stover, however, we feel that circumstances would make the award of attorney fees against them unjust. At the time of their involvement there was, of course, no court interpretation concerning the constitutionality of the Virginia statute. Their actions were pursuant to a duly enacted state statute, and when they were named as defendants, they did not defend the statute on its merits as did the intervening Commonwealth.
 
 
 18
 In view of the above, the district court's denial of attorney fees is reversed insofar as it related to the Commonwealth of Virginia, and is remanded to the district court with instructions to assess attorney fees against the Commonwealth. The district court's decision denying attorney fees against defendants Strobel and Stover is affirmed.
 
 
 19
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Charles T. Strobel, Director of Public Safety for the City of Alexandria, Virginia, was named as a defendant in the district court, but has not appealed from that court's judgment
 
 
 [2]
 The amended section 18.2-391(a) provides that:
 It shall be unlawful for any person knowingly to sell or loan to a juvenile, or to knowingly display for commercial purpose in a manner whereby juveniles may examine and peruse:
 (1) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts sexually explicit nudity, sexual conduct or sadomasochistic abuse and which is harmful to juveniles, or
 (2) Any book, pamphlet, magazine, printed matter however reproduced or sound recording which contains any matter enumerated in paragraph (1) of this subsection, or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sadomasochistic abuse and which taken as a whole, is harmful to juveniles.
 (Emphasis supplied to show language added by the 1985 amendment.)
 
 
 [3]
 The action was based on federal constitutional provisions, as well as 42 U.S.C. Sec. 1983 (1982) and 28 U.S.C. Secs. 2201 and 2202 (1982)
 
 
 [4]
 The facts of this case distinguish it from our recent decision in Doe v. Duling, 782 F.2d 1202 (1986), which challenged on privacy grounds a nineteenth century fornication statute which had not been enforced in private homes for years, if not decades. In the instant case, the amendment is newly enacted. It would be unreasonable to assume that the General Assembly adopted the 1985 amendment without intending that it be enforced. Additionally, this is a first amendment case. In the context of threats to the right of free expression, courts justifiably often lessen standing requirements. As the Supreme Court said in a recent discussion of this issue, in first amendment cases "the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged." Secretary of State of Maryland v. J.H. Munson Co., 467 U.S. 947, 104 S.Ct. 2839, 2847, 81 L.Ed.2d 786 (1984). See Upper Midwest Booksellers Assoc. v. City of Minneapolis, 780 F.2d 1389, 1391 n. 5 (8th Cir.1985)
 
 
 [5]
 The Commonwealth also attacks the standing of the various trade associations to sue as representatives of their member retail and wholesale businesses. The prerequisites for associational standing set forth in Hunt v. Washington Apple Advertising Commission, 432 U.S. 333, 342-43, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977) are present in this case, and we see no merit to this aspect of the Commonwealth's argument
 
 
 [6]
 The General Assembly modified the definition of materials considered harmful to juveniles to parallel the obscenity standards detailed in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)
 
 
 [7]
 We also question whether an older minor's first amendment rights can be limited by the standards applicable to younger juveniles. "[M]inors are entitled to a significant measure of First Amendment protection" and the government may restrict these rights "only in relatively narrow and well-defined circumstances." Erznoznik v. City of Jacksonville, 422 U.S. 205, 212-13, 95 S.Ct. 2268, 2274, 45 L.Ed.2d 125 (1975). These restrictions are justified when a child is not possessed of a full capacity for individual choice, and, in assessing that capacity, the age of the minor is a significant factor. Id. at 214 n. 11, 95 S.Ct. at 2275 n. 11. While the preamendment statute allowed retailers to consider a minor's relative maturity in deciding whether to sell a particular item to him, the current statute's display provision is not susceptible to such a selective application
 
 
 [8]
 As we note, infra, we disagree with the rationale of some cases which hold that otherwise constitutionally offensive "display" provisions can be legitimized by specifying certain restrictive display methods as being acceptable under the statute. Technically, however, the ordinance upheld in M.S. News Co. v. Casado, 721 F.2d 1281 (10th Cir.1983), is distinguishable from the Virginia statute which we review in that it specifically provides that material kept behind "blinder racks" was not deemed to have been "displayed." Similarly, retailers were able to comply with the ordinance in Upper Midwest Booksellers, 780 F.2d 1389, by placing the materials behind opaque covers, in sealed wrappers, or in "adults only" settings
 
 
 [9]
 The district court heard testimony from three witnesses in order to "flesh out" the pleadings and provide a more complete record. The bookstore owners testified that they felt between 30 and 50% of their inventory was covered by the display provision. The Commonwealth argues that only a "minuscule percentage" of the plaintiffs' inventory would be involved. The district court found that a significant percentage of the inventory of the average general bookstore, varying between 5 and 25%, falls within the amendment's restrictions